## Harry Simmons, a minor, by Walter C. Simmons, Appellee, v. Commonwealth Edison Company, Appellant.

## Gen. No. 21,686.

1. ELECTRICITY, § 24*—*when declaration in action for injuries by electric light wire is sufficient after verdict.* In an action for damages for personal injuries sustained from coming into contact with a live electric wire of an electric light company, where the declaration charged that the defendant carelessly and negligently suffered the wire to be and remain in a bad and unsafe repair and condition and to be and remain lying upon the sidewalk for a long space of time, *held* that either charge was sufficient to sustain a judgment after verdict for plaintiff.

2. ELECTRICITY, § 25*—*when doctrine of res ipsa loquitur applies.* The doctrine of *res ipsa loquitur* applies to a live electric wire extending over a public street, particularly when such wire is in charge of one having particular or peculiar knowledge of such wires, as an electric light company.

3. NEGLIGENCE, § 120*—*necessity of pleading res ipsa loquitur.* The doctrine of *res ipsa loquitur* is not a matter of pleading but of proof, and a declaration alleging negligence in general terms, to which no objection is made, is sufficient where proof is offered of circumstances from which an imputation of negligence necessarily arises.

4. ELECTRICITY, § 27*—*when evidence insufficient to rebut prima facie case of res ipsa loquitur.* In an action against an electric light company for damages for personal injuries sustained from a live electric wire, where the doctrine of *res ipsa loquitur* applied, and the defendant's evidence was to the effect merely that defendant used the usual and modern methods in regard to the wire, that it was in good condition, was a standard wire in similar use in the locality, that its ordinary life was twenty years and that this wire was in use for only five or six years, *held* that a finding by the jury that the prima facie case made out for the plaintiff had not been met, was not against the manifest weight of the evidence.

5. ELECTRICITY, § 26*—*when evidence as to manner that live electric wire passes through a tree is admissible in action for injuries therefrom.* In an action against an electric light company to recover damages for personal injuries from a live electric wire strung through a tree, evidence as to the manner it passed

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

through the tree *held* admissible under a charge that the defendant negligently and carelessly suffered the wire to be and remain in unsafe repair and condition, although the manner in which the wire passed through the tree was not relied upon as a ground of recovery.

6. ELECTRICITY, § 27*—*when evidence is sufficient to show negligence of electric light company in leaving charged wire on sidewalk.* In an action against an electric light company to recover damages for injuries received from a charged electric wire which was lying on the sidewalk, evidence *held* sufficient to sustain a finding that defendant had been negligent in leaving the wire on the sidewalk for a long time.

7. APPEAL AND ERROR, § 1410*—*what is province of Appellate Court in determining sufficiency of evidence to sustain a finding.* It is not the province of the Appellate Court to weigh the testimony further than necessary to determine whether a finding is against the manifest weight of the evidence.

8. APPEAL AND ERROR, § 1514*—*when improper remarks of counsel are not ground for reversal.* Where argument of counsel to the jury was objected to on the trial, objection sustained, and counsel abandoned that line of argument, *held* that no error was shown by reason of such argument.

9. DAMAGES, § 112*—*when verdict for injury to boy is not excessive.* In an action to recover damages for personal injuries sustained by a boy eight or nine years old from a live electric wire, *held*, considering the nature and severity of the shock, pain and suffering, resultant less satisfactory work at school, and lowered tone of nervous system, and jury's observation of the boy in court, and evidence which, if true, would have justified the jury in believing the boy's perceptions and capabilities had been materially lessened, that a verdict of $8,000 was not excessive.

Appeal from the Circuit Court of Cook county; the Hon. JOHN A. DOWDALL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1915. Affirmed. Opinion filed February 7, 1917. *Certiorari* denied by Supreme Court (making opinion final).

GOODRICH, VINCENT & BRADLEY, for appellant; RALPH R. BRADLEY, of counsel.

BRUNDAGE, SANDERS & HOLT, for appellee.

MR. JUSTICE GOODWIN delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

By this appeal the appellant, which is hereafter referred to as defendant, seeks the reversal of a judgment against it in favor of the appellee, who is hereafter referred to as plaintiff, for $8,000 for damages caused by a broken electric service wire. The declaration charged, in substance, that the defendant was engaged in distributing electricity in the City of Chicago; that it was using the wire in question for that purpose, and that it was its duty to keep and maintain it in good and safe repair and condition, and to prevent it from breaking and falling upon the street; that it carelessly and negligently suffered this wire, while charged with electricity, to be and remain in a bad and unsafe repair and condition, so that it broke and fell upon the sidewalk, and carelessly and negligently permitted it to remain there for a long space of time charged with electricity, exposed, unprotected, and unguarded, without any warning of its dangerous character, and the plaintiff was injured by the wire while in the exercise of due care and caution for his own safety.

The testimony of one Mary E. Hubbard shows that she saw the wire in question lying on the sidewalk between seven and eight o'clock on the morning of the accident; that she told her son to watch it, and she called the police on the telephone, and afterwards notified the telephone company; that shortly thereafter a man came from the telephone company and told her it was an Edison wire; that she then called the Edison company about seven-thirty, getting their number from the telephone book, and told them the wire was down; that about three-quarters of an hour afterwards she sent her boy on an errand, and while he was away the plaintiff was injured. On cross-examination she said she would not say that she had not told one Pilkington that she did not call the Edison company; that she did call the Edison company about eight o'clock

or half past seven; that it might have been later, but not much, and that she just called the Edison company's general number. She also testified that the wire in question ran through the alley to the south, and then through private property to the street; that right at the entrance of the alley there was a large tree, and that the wire ran through the branches. The son of this witness testified that this tree stood on the parkway of the house next to theirs; that the wire ran through the tree, which was a good sized one, and as high as the house.

Plaintiff, who was between eight and nine years of age, saw the wire about eight forty-five o'clock, picked it up, and was injured. After the injury, he was out of school a month. He testified that his writing was worse than it was before; that he could not throw as far, nor run as fast; that he had a scar on his hand and leg; that if he carried a heavy basket "the scar gets real raw and burns." The evidence showed that up to the time of the accident his health had been good.

A physician was called, who testified that the plaintiff had been under his medical care since the accident; that he treated him about six weeks; that he examined him about a week before the trial; that the effect of the passage of a strong charge of electricity through the body was to cause burns and shock, and that the severity of the shock depended upon the amount of the current. On cross-examination he said that the extension of the ring and middle fingers of the injured hand was somewhat limited, and that the headaches complained of by the plaintiff might be the result of the shock, and might be the result of a great many other things.

Plaintiff's mother testified that since the accident he had been very nervous and restless at night; that his nerves had been unstrung, and that he had headaches a great deal. The father testified that the plaintiff's right hand was badly burned.

One Ethel H. Walker, a public school teacher, testified that plaintiff was in her school; that before the time of the accident he was perfectly normal, but after his return to school after the accident he was thin, pale, and did not sit erect, as before; that he did not recover his former position during the year; that there was a marked difference in his writing; that he applied himself in his other work, but did not seem to get the same result; that before the accident he had ranked among the highest in his class, but after the injury he ranked among the lowest—about fortieth in his class; that she did not see him after June, 1912, until about a year before the trial.

The testimony on behalf of the defendant was to the effect that it never received notice of the accident from the witness Mary E. Hubbard, but that its trouble man was notified by a mail collector, and that he immediately came to the scene of the accident and cut down the wire. A witness testified that Mrs. Hubbard told him on two occasions that she did not notify defendant. Its testimony was also to the effect that the wire had been in use about six years; that the morning was damp, and the wire would therefore make a ground circuit. The wire, which was received in evidence, was burned at one end; this was the end that lay on the street.

One of defendant's engineers testified that he was familiar with the electrical equipment used throughout the country, and that the circuit in question was equipped at the time with all the devices which are customary and in common practice and use on such a circuit for the purpose of safeguarding the plant, equipment, and the public; that he did not mean to say that he was familiar with the situation in that particular location, but that he was familiar with the type of construction and the general method of construction.

A physician, called on behalf of the defendant, testi-

fied that the plaintiff was a normal sized boy for his age; that he was not a large boy, but was practically a normal boy, and was likely to start growing at any time, and would grow rapidly; that his bones were naturally small.

The defendant claims that the negligence charged in the declaration was not proved as claimed. The negligence charged, however, was that defendant carelessly and negligently suffered the wire to be and remain in a bad and unsafe repair and condition, and to be and remain lying upon said sidewalk for a long space of time. Either one of these charges was sufficient to sustain a judgment after verdict. The only proof offered was as to the ownership of the wire, its position over the street, and the fact that it broke without the intervention of any third party and in circumstances which, to say the least, could not be said to be abnormal or unusual. This record shows, and it is a matter of common knowledge of which the court might properly take notice, that an electric service wire is highly dangerous, and its presence over a public street, therefore, casts upon its owners a duty to use a high degree of care to protect the public. Moreover, the tensile strength of the wire, the manner in which it is constructed, the way it is secured, and the precautions that are taken for the protection of the public, are, as between the plaintiff and the defendant, within the peculiar knowledge of the latter. When, therefore, an accident of the kind in question happens—an accident which in the ordinary course of things would not happen if those who had the management used proper care—it permits a reasonable inference, in the absence of explanation by the defendant, that the accident arose from a want of care. In such a case, the duty of explanation is thrown upon those having charge of the thing, particularly when, as here, information concerning the thing itself is within the particular or peculiar

knowledge of the defendant.  (*Bolger v. City of Chicago,* 198 Ill. App. 123.)  It would seem that there are few cases to which the application of the doctrine of *res ipsa loquitur* is more directly applicable than such a one as the case at bar.  We are therefore of the opinion that proof that a charged wire broke and fell upon the sidewalk, and in no unusual circumstances, threw the burden of explanation upon the defendant. Did the evidence offered overcome the prima facie case thus made out?  Defendant's evidence on this point was very meager; it consisted of a general statement that the usual and most modern methods were used by the company; that  the condition of the wire was good; that it was the standard wire in similar use in Chicago; that its life was ordinarily twenty years, and that this had been used but five or six years. It may at least be said with confidence that when the fullest effect is given to all the testimony offered on behalf of the defendant, it is not sufficient to justify this court in saying that a finding by the jury that the prima facie case made out by the plaintiff had not been met, would be contrary to the manifest weight of the evidence.

Counsel contend, however, that the pleadings in the declaration, in the absence of a count in *res ipsa loquitur,* makes it impossible to sustain the judgment. The answer to this contention is that *res ipsa loquitur* is not and cannot be a matter of pleading, but is a matter of proof.  The negligence was laid in general terms to which no objection was taken, and, in support of those general allegations, proof was offered of circumstances from which an imputation of negligence necessarily arose.  This was a matter of evidence, and therefore plaintiff was not required to plead it.  Defendant's counsel further contend that the court improperly admitted evidence in regard to the manner in which the wire passed through

the tree. As the negligence charged was that defendant carelessly and negligently suffered one of said wires to be and remain in a bad and unsafe repair and condition, testimony in regard to any surrounding circumstances which might establish that condition was obviously proper. The argument of counsel for plaintiff was that the chafed condition of the wire proved that defendant had permitted it to get out of repair, and contended that this was corroborated by the fact that the wire passed through the branches of the tree. In determining whether or not the wire was out of repair, and whether or not defendant had permitted it to remain in that condition, the plaintiff had a right to show every surrounding circumstance which had a bearing on the case. An examination of the argument of counsel as it appears in the abstract of record shows that the manner in which the wire was passed through the tree was not relied upon as a ground of recovery, but, as indicated already, a fact tending to corroborate plaintiff's contention in regard to the condition of the wire.

Upon the question of the other negligence relied upon in the declaration, namely, that defendant negligently permitted the wire to lie and remain upon the sidewalk for a long time, it is enough to say that the evidence upon this point is conflicting. Mrs. Hubbard swore positively that she notified the defendant shortly after seven forty-five; the testimony on this point on behalf of the defendant is necessarily negative, and is supported by the statement of an investigator, who said that Mrs. Hubbard told him that she never notified the defendant, and she, herself, says that she might have told him that, but at the same time, she insisted that she did notify defendant. The testimony on behalf of defendant on this point was that none of the load distributors were notified. This might, of course, have been true even if Mrs. Hubbard called

Simmons v. Commonwealth Edison Co., 203 Ill. App. 367.

up the general telephone number of defendant company, and reported the accident. Her testimony in regard to her talk with defendant's investigator was as follows: Q. "Didn't you tell Mr. Pilkington at that time that you called up the police and the Telephone Company and did not call up the Edison Company?" A. "I don't remember that I told him that; I know I called everybody that day." Q. "You would not say that you did not tell him that, that you did not call the Edison Company?" A. "No sir, I would not."

It is not the province of this court to weigh the testimony except in so far as it is necessary in determining whether the verdict is contrary to the manifest weight of the evidence. The jury saw and heard the witnesses, and observed their demeanor on the stand, and we, therefore, do not feel that we would be justified in saying that a conclusion by the jury that Mrs. Hubbard gave the defendant timely notice of the broken wire would be contrary to the manifest weight of the evidence.

The argument objected to in regard to what the jury had a right to consider in weighing the testimony of the witnesses was, in the main, as applicable to the witnesses for one party as the other, and it was not objected to on the trial. The only other portion objected to was a statement that if the jury believed from the evidence that the defendant allowed this wire to dangle over the fence and took a chance and were negligent, he could ask on this evidence, "exemplary damages as a punishment to teach them they should not do that sort of thing." When that was objected to on the ground that it was not counted on in the declaration, counsel said: "I placed the amount in my declaration at $25,000." That remark was not objected to, and the objection to the former remark was sustained. Counsel thereupon proceeded with an

argument strictly confined to actual damages and the jury were afterwards fully and accurately instructed on that subject. Counsel for plaintiff contend that under the declaration plaintiff was entitled to recover exemplary damages if the evidence justified such an allowance, and, apparently in good faith, he stated to the jury on the trial that if they believed certain things from the evidence, he could ask for such damages. The question of whether such damages would have been recoverable is not, we think, before us, in view of the fact that the court sustained the objection and counsel abandoned that line of evidence. In view of all the circumstances, the conduct of counsel for plaintiff cannot be said to have been in any way improper, and in view of the repeated decisions of our Supreme Court, the situation shown cannot be said to have brought error into the record. (*City of Chicago v. Leseth,* 142 Ill. 642; *Quincy Gas & Electric Co. v. Baumann,* 203 Ill. 295.)

Counsel for defendant further contend that the verdict is excessive. The measure of damages in such a case is a matter of extreme difficulty, and is purely a question of fact for the jury. In view of the testimony in regard to the nature and severity of the shock, of the pain and suffering which must have resulted from it, or the effect upon his capacity to do satisfactory work at school, of the lowered tone of his nervous system, and in view of the fact that the jury had ample opportunity during the trial to judge of the plaintiff's physical condition, we do not feel justified in saying that its verdict was excessive. There was evidence which, if believed, would have justified the jury in believing that plaintiff's perceptions and capabilities had been materially lessened by the accident, and we are not prepared to say that such an injury to a boy of his years would be more than compensated for by the judgment, especially when it is remembered how

Hudson v. Grand Rapids & Indiana Ry. Co., 203 Ill. App. 377.

small an income it would produce, either at interest or in the form of an annuity.

As there appears to be no error in the record, the judgment of the Circuit Court is affirmed.

*Affirmed.*