SECURITY INSURANCE COMPANY, APPELLANT, v. OMAHA COCA-COLA BOTTLING COMPANY, APPELLEE.

62 N. W. 2d 127

Filed January 15, 1954.   No. 33404.

*Pilcher & Haney,* for appellant.

*Kennedy, Holland, DeLacy & Svoboda,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

Wenke, J.

Security Insurance Company, an insurance company, brought this action in the district court for Douglas County against the Omaha Coca-Cola Bottling Company, a corporation. The purpose of the action is to recover from the defendant the sum of $2,950.30 which plaintiff was forced to pay on behalf of the Woodmen of the World Life Insurance Society and Omaha Welding Company, Inc., two of its insureds. The basis of the action is negligence. At the conclusion of plaintiff's case the trial court sustained defendant's motion for a directed verdict and dismissed the action. Its motion for new trial having been overruled, the plaintiff perfected this appeal.

In view of the manner in which the action was disposed of by the trial court we shall apply to the evidence adduced, insofar as material to the questions raised, the following principle: "A motion for directed verdict or its equivalent must, for purpose of decision thereon, be treated as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence." Bishop v. Schofield, 156 Neb. 830, 58 N. W. 2d 207.

And, when so considered, we shall view the result in light of the following principle: "In an action where there is any evidence which will support a finding for a party having the burden of proof, the trial court cannot disregard it and direct a verdict against him." Bishop v. Schofield, *supra*.

These basic facts are not in dispute: The Woodmen of the World Life Insurance Society owned a two-story building in Omaha, Nebraska, located at 1513-23 Marcy Street. It had leased this building to the Omaha Welding Company, Inc., who was occupying it as lessee. Appellant had a policy of insurance with the owner and

lessee covering the building against loss or damage from fire. On Sunday, May 8, 1949, the interior of the building was materially damaged by smoke and appellant, pursuant to the provisions of the foregoing policy, paid $2,950.30 for cleaning and redecorating. It thereupon, in consideration of the sum paid, took a subrogation receipt from the insureds. This receipt assigned to it any rights they, the insureds, might have against any person or corporation liable for the loss. Appellant then brought this action as such subrogee on the ground that appellee's negligence was the cause of the fire.

Appellant did not allege any specific acts of negligence on the part of the appellee but only that through its employees it carelessly and negligently permitted its pop vending machine, which had been placed in this building pursuant to an oral agreement with the lessee, to catch fire, causing the entire building to become filled with heavy smoke and causing the interior of the building to become covered with sticky, gummy deposits, making necessary the cleaning and decorating. It is appellant's thought that the doctrine of res ipsa loquitur has application to the situation presented by the evidence it adduced and that, because of the doctrine having application, the evidence adduced presented a question for the jury.

The doctrine of res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel it. The doctrine is a rule of evidence and not a rule of substantive law. It is a qualification of the general rule that negligence is not to be presumed but must always be affirmatively proved. It merely takes the place of evidence as affecting the burden of proceeding with the case. When facts are adduced to which it has application an inference of negligence arises, that is, the thing speaks for itself. When facts are adduced to which it has application it then presents a question for the jury as to liability. The applicability of the doctrine always depends upon the

particular facts and circumstances of each case. See, 38 Am. Jur., Negligence, § 298, p. 994; Highland Golf Club v. Sinclair Refining Co., 59 F. Supp. 911.

The evidence adduced shows that prior to May 8, 1949, appellee, a corporation engaged in the business of manufacturing and dispensing beverages, entered into an oral agreement with the lessee of this building whereby, for a consideration of five-sixths of a cent for each bottle of pop sold, it would be permitted to place one of its pop vending machines in this building. Under and pursuant to this arrangement it did so and, on May 8, 1949, had such a machine in the lunchroom located therein. The lunchroom was on the first floor of the building. It was in a room 9 by 14 feet in size which had a cement floor. The walls were of a noncombustible material except there was a narrow strip of wainscoting which extended around the room. This strip was located about 4 feet from the floor.

This room, in addition to appellee's pop vending machine which was located against the east wall thereof at a point about 34 inches south of the door leading into it, contained quite a number of wooden cases filled with bottles of pop, a Seven-Up vending machine, and two wooden tables with benches. The cases of pop were stacked against the east wall just south of the Coca-Cola vending machine. The Seven-Up machine was in the southeast corner of the room and a couple of feet south of the cases of pop. The wooden tables and benches were about in the center of the room. Along the west wall was a sink with a cupboard underneath, a table on which was a coffee urn and electric plate, and a wastebasket. This room was used by employees of the lessee as a place in which to eat their lunch.

Appellee's vending machine was of a water cooling type. It was about 37 inches long, 25 inches wide, and 3 feet high. Its exterior was of metal and would open sufficiently at the top, when a nickel was deposited, to enable the customer to obtain the merchandise he had

purchased. The cooling unit was operated by means of an electrically driven motor and compressor, which were located immediately underneath the upper compartment or cooler. Power to operate it was obtained by plugging a cord into a double socket located in the east wall. Both this and the Seven-Up machines were plugged into this socket. The machine was entirely enclosed by metal. The lower part was ventilated from the front by a slotted strip and access thereto could be had by lifting this strip. This was apparently for convenience in servicing the motor and compressor. The top could also be unlocked and additional supplies of pop added. The lessee had a key for this purpose which permitted it to have a supply of cold pop available at all times. However, appellee owned and agreed to keep the machine in working order.

One of lessee's janitors, after thoroughly cleaning up the lunchroom, left the building about 5 a. m. on Sunday, May 8, 1949. Lessee did not operate on Sundays and apparently no one entered the building on this Sunday until shortly after 10 p. m. when another janitor reported for duty. He found the building filled with smoke and the damage, already referred to, resulting therefrom. He thoroughly examined the building and found no fire but did find that the Coca-Cola vending machine and the wooden pop cases adjacent thereto had been completely burned, leaving only the metal shell of the machine, the metal strips from the cases, and the melted and twisted glass from the bottles contained therein. On the floor surrounding this debris was a sodden mass which apparently came from the sugar in the pop. Nothing else in the lunchroom had burned. The only other evidence of the fire was a brown-scorched spot on the white finish of the Seven-Up machine, a scorched place immediately above the Coca-Cola machine on the wooden wainscoting, and the scorched wall back of the machine and pop cases.

There is some evidence that for several days immedi-

ately preceding the fire the machine, when operating, had been noisy; that on at least two occasions lessee had notified appellee of that fact; and that appellee had failed to take any action in regard thereto. There is no evidence from which it could be found that this noise was in any way connected with or a cause of the fire. This evidence, in the first place, was irrelevant and the objection thereto by appellee should have been sustained. See, Mischnick v. Iowa-Nebraska Light & Power Co., 125 Neb. 598, 251 N. W. 258; 65 C. J. S., Negligence, § 220(6), p. 1002.

As stated in Mischnick v. Iowa-Nebraska Light & Power Co., *supra:* "The doctrine of res ipsa loquitur proceeds on the theory that, under special circumstances which invoke its operation, the plaintiff is unable to specify the particular act of negligence which caused the injury, but if the petition alleges particular acts of negligence, then the plaintiff, in order to recover, must establish the specific negligence alleged, and the doctrine of res ipsa loquitur cannot be applied. 45 C. J. 1225; Marshall Window Glass Co. v. Cameron Oil & Gas Co., 63 W. Va. 202; Knies v. Lang, 116 Neb. 387."

However, we think if the doctrine has application here the following would apply: "* * * plaintiff is not deprived of the benefit of the doctrine from the mere introduction of evidence which does not clearly establish the facts or leaves the matter doubtful, for, if the case is a proper one for the application of the doctrine and if, under the rules discussed infra s. 220 (11), the pleading is such that it may be invoked, an unsuccessful attempt on the part of plaintiff to show the specific negligent act which caused his injury does not weaken or displace the presumption of negligence on the part of the defendant arising from the facts of the case by virtue of the rule of res ipsa loquitur." 65 C. J. S., Negligence, § 220(6), p. 1004.

Such would naturally be true because if the doctrine applied and appellee would attempt to show, in making

a defense, that it had caused the machine to be properly serviced then such evidence would have been proper on rebuttal.

Although, as a general rule, the mere occurrence of a fire, with resultant damage, does not raise a presumption of negligence, however, the circumstances under which a fire occurs may sometimes be such as to justify the application of the doctrine res ipsa loquitur and impose upon the defendant the burden of proving his freedom from fault. See, 22 Am. Jur., Fires, § 76, p. 643; 65 C. J. S., Negligence, § 220(12), p. 1038; Highland Golf Club v. Sinclair Refining Co., *supra.*

We have, on several occasions, done so. In the cases of Burlington & M. R. R. Co. v. Westover, 4 Neb. 268, and Rogers v. Kansas City & O. R. R. Co., 52 Neb. 86, 71 N. W. 977, we applied the doctrine where the fire was started by sparks from a steam locomotive, and, also, in Friederich v Klise, 95 Neb. 244, 145 N. W. 353, where the fire was started by sparks from a steam engine used in threshing. However, in the latter case the opinion would indicate there was evidence of a defective condition in the spark arrester on the smokestack.

The doctrine of res ipsa loquitur is of limited and restricted scope and should ordinarily be applied sparingly. We do not think it has application to the situation here presented. It seems significant that no case is cited, nor did we find one, wherein the doctrine was sought to be applied to a like situation, let alone held applicable thereto.

In view of what we have said we do not find it necessary to discuss the contention that the evidence adduced is not sufficient to support a finding that the fire started in the machine. Likewise, we will not discuss the extent to which one sought to be.held must have the management and control of the instrument causing the damage and to which the doctrine is sought to be applied.

Having come to the conclusion that the trial court was correct in sustaining appellee's motion for a directed

verdict, we affirm its action in doing so and in dismissing the action.

.AFFIRMED.