KATHY ANDERSON, APPELLANT, V. SERVICE MERCHANDISE
COMPANY, INC., AND SYLVANIA LIGHTING SERVICES CORPORATION,
APPELLEES.

485 N.W.2d 170

Filed June 12, 1992.   No. S-89-1188.

Thomas M. White, of Fitzgerald, Schorr, Barmettler &
Brennan, for appellant.

Thomas D. Wulff, of Kennedy, Holland, DeLacy &
Svoboda, for appellee Service Merchandise.

Edward G. Warin and Lynn Ann Killeen, of Gross & Welch, for appellee Sylvania.

HASTINGS, C.J., BOSLAUGH, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Kathy Anderson appeals from dismissal of her negligence action based on res ipsa loquitur. In granting the summary judgments and dismissing Anderson's action against Service Merchandise Company, Inc. (Service Merchandise), and Sylvania Lighting Services Corporation (Sylvania), the district court for Douglas County concluded that "the subject matter involved in this litigation was not under the exclusive control of each defendant." We affirm in part, and in part reverse and remand for further proceedings.

## FACTUAL BACKGROUND

Service Merchandise operates a retail store on premises leased from Jewel Companies, Inc., since June 1, 1978. To maintain the store's overhead lighting system, Service Merchandise in April 1985 entered a service contract with Sylvania, which agreed to change the system's "ballasts" and "sockets" as needed at periodic intervals. The contract stated that "[n]o other scope of work will be performed without prior approval" of the Service Merchandise maintenance department and that "[a]ny and all services performed must be approved" by Service Merchandise. Pursuant to the service contract, Sylvania entered the Service Merchandise store in May and September 1985 and replaced a number of "lamps," in addition to ballasts, which are resistance units used to stabilize the current in a circuit for an arc lamp, a mercury-vapor lamp, or a fluorescent lamp. During that time, Sylvania spent a total of 12 hours over 3 days for work on the lighting system in Service Merchandise's store. Nothing presently indicates that before the accident Sylvania did any additional physical work on Service Merchandise's lighting system after the previously described services in 1985. On May 8, 1986, Sylvania returned to the Service Merchandise store and performed a "lighting inspection." What may have been involved in that inspection is

undisclosed. Notwithstanding the service contract, Service Merchandise's employees "changed elements in the light fixtures in the store" and changed "the lamps when they burn[ed] out."

On June 27, 1986, some 7 weeks after Sylvania's inspection, Anderson was standing in the checkout line of Service Merchandise's store, when an overhead light fixture fell approximately 16 feet from the store's ceiling and struck Anderson on the back of the neck, head, and shoulder, resulting in Anderson's personal injury and medical expenses.

## PLEADINGS AND SUMMARY JUDGMENTS

Anderson sued Service Merchandise under the doctrine of res ipsa loquitur, alleging in part that "[t]he light fixture was and remained under the exclusive control of the defendant up to the time it fell out of the ceiling and struck Kathy Anderson." In its answer, Service Merchandise denied negligence and specifically denied that the light fixture had been in its exclusive control, because Service Merchandise "was merely a lessee of the premises." With the court's permission, Anderson filed an amended petition, adding Sylvania as a codefendant and alleging that Sylvania had contracted to service and maintain the light fixtures in Service Merchandise's store and that the fixture which struck Anderson had been under the "exclusive control" of both defendants. With its answer to Anderson's amended petition, Service Merchandise filed a "cross claim" against Sylvania, alleging that Sylvania was the last entity to service the particular light fixture before the accident, and claiming that Service Merchandise was "entitled to contribution and/or indemnity" from Sylvania.

Service Merchandise and Sylvania each moved for a summary judgment on the grounds that res ipsa loquitur was inapplicable as a matter of law and that there was no genuine issue of material fact. The district court determined "as a matter of law that the subject matter involved in this litigation was not under the exclusive control of each defendant and therefore the doctrine of res ipsa loquitur does not apply." No information presented in conjunction with the summary judgment motions indicated any specific negligence by Service

Merchandise or Sylvania. For that reason, the court dismissed Anderson's action.

## ASSIGNMENTS OF ERROR

Anderson has asserted six assignments of error on appeal, all of which coalesce into one contention: The court erred in concluding that the doctrine of res ipsa loquitur was inapplicable as a matter of law, because the court incorrectly concluded that the defendants were not in exclusive control of the instrumentality which struck Anderson.

## STANDARD OF REVIEW

Anderson refers to *Bank of Valley v. Shunk*, 208 Neb. 200, 302 N.W.2d 711 (1981), for the proposition that "[s]ummary judgment is an extreme remedy and should be awarded only when the issue is clear beyond all doubt." Brief for appellant at 8. The "clear beyond all doubt" standard has occasionally found its way into other opinions issued by this court; for example, see, *Nichols v. Ach*, 233 Neb. 634, 447 N.W.2d 220 (1989); *Hanzlik v. Paustian*, 211 Neb. 322, 318 N.W.2d 712 (1982); *Schaffert v. Hartman*, 203 Neb. 271, 278 N.W.2d 343 (1979); *Hollamon v. Eagle Raceway, Inc.*, 187 Neb. 221, 188 N.W.2d 710 (1971); *Storz Brewing Co. v. Kuester*, 178 Neb. 135, 132 N.W.2d 341 (1965).

Neb. Rev. Stat. § 25-1332 (Reissue 1989) provides in part: "The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

"[A]s a procedural equivalent to a trial, a summary judgment is an extreme remedy because a summary judgment may dispose of a crucial question in litigation, or the litigation itself, and may thereby deny a trial to the party against whom the motion for summary judgment is directed." *Wachtel v. Beer*, 229 Neb. 392, 399, 427 N.W.2d 56, 61 (1988). Accord *Wiles v. Metzger*, 238 Neb. 943, 473 N.W.2d 113 (1991). A rationale for use of a summary judgment is the disposition and elimination of frivolous or baseless lawsuits that would otherwise necessitate unwarranted trials and consume valuable

time, avoidable expense, and judicial resources better directed toward litigation that resolves real controversies, meritorious claims, and valid issues.

Section 25-1332 is virtually identical to Fed. R. Civ. Prac. 56. See *In re Freeholders Petition*, 210 Neb. 583, 316 N.W.2d 294 (1982). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), the Supreme Court stated that a "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and indicated a proper standard for granting a summary judgment:

> [T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

(Emphasis in original.) 477 U.S. at 247-48. See, also, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

Overly restrictive standards for justification of a summary judgment under Rule 56 have been criticized by Wright, Miller, and Kane:

> [A] few courts have held that a scintilla of evidence is sufficient to preclude summary judgment. This holding is extremely dubious in light of the strong analogy between summary judgment and the . . . motion for a directed verdict and the applicability of the same standard to both motions. A scintilla of evidence will not bar a directed verdict because, by hypothesis, a jury may not rely on it as a basis for reaching a verdict. Thus it has been held that it should not prevent summary judgment. . . . In a similar

> vein a restrictive attitude toward summary judgment also frequently is expressed by invoking the shopworn expression that summary judgment should not be granted when there is the "slightest doubt" as to the facts. This phrase has been characterized as a misleading gloss on the words "genuine issue" in Rule 56(c) and has resulted in a more narrow approach to summary judgment than the rule warrants.

10A Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure: Civil § 2727 at 175-77 (2d ed. 1983).

The "clear beyond all doubt" standard for a summary judgment presents an elevated or enhanced burden greater than "beyond a reasonable doubt," applicable in the trial of a criminal case. Moreover, the "clear beyond all doubt" standard is inconsistent with the standard expressed in § 25-1332. Accordingly, we now disapprove of "clear beyond all doubt" as a standard for a summary judgment and reaffirm the correct rule:

> "A summary judgment is properly granted when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue concerning any material fact or the ultimate inferences deducible from such fact or facts and that the moving party is entitled to judgment as a matter of law. [Citations omitted.] In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. [Citation omitted.]"

*Murphy v. Spelts-Schultz Lumber Co., ante* p. 275, 277, 481 N.W.2d 422, 425 (1992) (quoting from *Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.,* 229 Neb. 160, 425 N.W.2d 872 (1988)). Accord, *DeCamp v. Lewis,* 231 Neb. 191, 435 N.W.2d 883 (1989); *Wilson v. F & H Constr. Co.,* 229 Neb. 815, 428 N.W.2d 914 (1988); *Wibbels v. Unick,* 229 Neb. 184, 426 N.W.2d 244 (1988).

" 'On a motion for summary judgment, the question is not

how a factual issue is to be decided, but whether any real issue of material fact exists.' " *Murphy v. Spelts-Schultz Lumber Co., ante* at 277-78, 481 N.W.2d at 426 (quoting from *Newman v. Hinky Dinky*, 229 Neb. 382, 427 N.W.2d 50 (1988)).

"The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law if the evidence presented for summary judgment remains uncontroverted. [Citations omitted.] After the movant for a summary judgment has shown facts entitling the movant to judgment as a matter of law, the opposing party has the burden to present evidence showing an issue of material fact which prevents a judgment as a matter of law for the moving party."

*Murphy v. Spelts-Schultz Lumber Co., ante* at 278, 481 N.W.2d at 426 (quoting from *Wilson v. F & H Constr. Co., supra*). Accord *Wiles v. Metzger*, 238 Neb. 943, 473 N.W.2d 113 (1991).

## RES IPSA LOQUITUR

As expressed in *Widga v. Sandell*, 236 Neb. 798, 803, 464 N.W.2d 155, 158-59 (1991), concerning the doctrine and elements of res ipsa loquitur:

[W]hen an instrumentality under the exclusive control and management of the alleged wrongdoer produces an occurrence which would not, in the ordinary course of things, come to pass in the absence of the negligence of the one having such management and control, the occurrence itself, in the absence of explanation by the alleged wrongdoer, affords evidence that the occurrence arose as the result of the alleged wrongdoer's negligence. *Maly v. Arbor Manor, Inc.*, 225 Neb. 276, 404 N.W.2d 419 (1987); *Beatty v. Davis*, 224 Neb. 663, 400 N.W.2d 850 (1987); *Fynbu v. Strain*, 190 Neb. 719, 211 N.W.2d 917 (1973); *McCall v. St. Joseph's Hospital*, 184 Neb. 1, 165 N.W.2d 85 (1969); *Security Ins. Co. v. Omaha Coca-Cola Bottling Co.*, 157 Neb. 923, 62 N.W.2d 127 (1954); *Miratsky v. Beseda*, 139 Neb. 229, 297 N.W. 94 (1941). Literally, the "thing speaks for itself."

Accord *Swierczek v. Lynch*, 237 Neb. 469, 466 N.W.2d 512 (1991).

Res ipsa loquitur operates as a type of circumstantial evidence, that is, "facts or circumstances, proved or known, from which existence or nonexistence of another fact may be logically inferred or deduced through a rational process." *State v. Jasper*, 237 Neb. 754, 763, 467 N.W.2d 855, 862 (1991). Accord *State v. Rokus, ante* p. 613, 483 N.W.2d 149 (1992). Regarding res ipsa loquitur,

> [t]he requirement that the occurrence be one which ordinarily does not happen without negligence is of course only another way of stating an obvious principle of circumstantial evidence: that the event must be such that in the light of ordinary experience it gives rise to an inference that someone must have been negligent.

Prosser and Keeton on the Law of Torts, *Circumstantial Evidence—Res Ipsa Loquitur* § 39 at 244 (5th ed. 1984). As further noted by Prosser and Keeton:

> The plaintiff is not required to eliminate with certainty all other possible causes or inferences, which would mean that the plaintiff must prove a civil case beyond a reasonable doubt. All that is needed is evidence from which reasonable persons can say that on the whole it is more likely that there was negligence associated with the cause of the event than that there was not. It is enough that the court cannot say that the jury could not reasonably come to that conclusion. Where no such balance of probabilities in favor of negligence can reasonably be found, res ipsa loquitur does not apply.

*Id.* at 248.

Thus, res ipsa loquitur is not a matter of substantive law, but, as a form of circumstantial evidence, is a procedural matter. See, *Asher v. Coca Cola Bottling Co.*, 172 Neb. 855, 112 N.W.2d 252 (1961); *Swanson v. Murray*, 172 Neb. 839, 112 N.W.2d 11 (1961); *Security Ins. Co. v. Omaha Coca-Cola Bottling Co.*, 157 Neb. 923, 62 N.W.2d 127 (1954). Consequently, if res ipsa loquitur applies, an inference of a defendant's negligence exists for submission to the fact finder, which may accept or reject the inference in the factual

determination whether the defendant is negligent. See, *Beatty v. Davis*, 224 Neb. 663, 400 N.W.2d 850 (1987); *Asher v. Coca Cola Bottling Company, supra*; *Swanson v. Murray, supra*; *Benedict v. Eppley Hotel Co.*, 161 Neb. 280, 73 N.W.2d 228 (1955); *Security Ins. Co. v. Omaha Coca-Cola Bottling Co., supra*; *Miratsky v. Beseda*, 139 Neb. 229, 297 N.W. 94 (1941). As pointed out in Prosser and Keeton on the Law of Torts, *Res Ipsa Loquitur—Procedural Effect* § 40 at 258 (5th ed. 1984):

> The inference of negligence to be drawn from the circumstances is left to the jury. They are permitted, but not compelled to find it. The plaintiff escapes a nonsuit, or a dismissal of his case, since there is sufficient evidence to go to the jury . . . .
>
> . . . As a general proposition, however, the procedural effect of res ipsa may be said to be a matter of the strength of the inference to be drawn, which will vary with the circumstances of the case.

Therefore, in Anderson's case, if res ipsa loquitur is inapplicable as a matter of law, there is no material question of fact regarding actionable negligence, and the summary judgments were proper dispositions. However, if res ipsa loquitur is applicable in light of the presentation at the hearing for summary judgments in Anderson's case, the inference of negligence itself presents a question of material fact, and the summary judgments were improper.

## ANDERSON'S RES IPSA CASE

"[I]n the ordinary course of things," part of a light fixture attached to a building's ceiling does not, in the absence of negligence, fall and injure an invitee. Thus, in Anderson's case the focal point is "exclusive control," a requisite element for application of res ipsa loquitur. See, *Widga v. Sandell*, 236 Neb. 798, 464 N.W.2d 155 (1991); *Maly v. Arbor Manor, Inc.*, 225 Neb. 276, 404 N.W.2d 419 (1987).

*Sylvania.*

What constituted Sylvania's "inspection" of the lighting system in May 1986, some 7 weeks before the light fixture fell on Anderson, is undisclosed. Therefore, Sylvania's last disclosed physical contact with the lighting system was in

September 1985, when Sylvania replaced some lamps and ballasts in the lighting system. Thus, there was a hiatus of approximately 9 months between Sylvania's last physical work on the lighting system and the light fixture's falling on Anderson. Also, independent of Sylvania's involvement with the lighting system, Service Merchandise's employees had unrestricted access to the lighting system and even changed burned-out lamps and elements in the light fixtures. As presented to us, the record fails to indicate Sylvania's control of the lighting system and its fixtures. While Sylvania had a contractual duty to maintain the lighting system in Service Merchandise's store, the record before us shows that Sylvania actually worked on the system a total of only 12 hours over 3 days during the 15-month period before Anderson's accident, with the last occasion being 9 months before the accident. Meanwhile, Service Merchandise and its employees had daily control over the entire premises, including the lighting system. Thus, Sylvania's control of the lighting system in Service Merchandise's store is so attenuated and lacking in continuity that Sylvania's control is nonexistent. Without control, there is no inference of negligence under res ipsa loquitur. Consequently, in the absence of Sylvania's participation in control over the lighting system, res ipsa loquitur was inapplicable as a basis for Anderson's negligence action against Sylvania. Without res ipsa loquitur, Anderson presented no evidence of Sylvania's negligence; therefore, the district court properly granted summary judgment to Sylvania.

However, nothing in this opinion should be construed to preclude possible application of res ipsa loquitur in situations when multiple defendants jointly exercise control of an instrumentality that causes harm to the complaining party. See *Swierczek v. Lynch*, 237 Neb. 469, 466 N.W.2d 512 (1991) (res ipsa loquitur applicable to alleged negligence of hospital, oral surgeon, and nurse anesthetist). Cf. *Asher v. Coca Cola Bottling Co.*, 172 Neb. 855, 112 N.W.2d 252 (1961) (successive control by defendants; res ipsa loquitur applied to beverage manufacturer when a dead mouse was found in an open soft drink bottle served to a restaurant customer). See, also, *Stalter v. Coca-Cola Bottling Co. of Ark.*, 282 Ark. 443, 669 S.W.2d

460 (1984) (grocery store and bottling company properly joined as defendants in res ipsa loquitur case involving falling bottle); *Jackson v. H. H. Robertson Co., Inc.*, 118 Ariz. 29, 574 P.2d 822 (1978) (negligence action based on construction site accident properly maintainable against two subcontractors under res ipsa loquitur); *Ybarra v. Spangard*, 25 Cal. 2d 486, 154 P.2d 687 (1944) (res ipsa loquitur applied to medical malpractice action based on negligence of unidentified members of operating room team); *Whitby v. One-O-One Trailer Rental Co.*, 191 Kan. 653, 383 P.2d 560 (1963) (injured plaintiff, asleep in a towed automobile that overturned when the hitch failed, could maintain res ipsa-based negligence action against both lessor and lessee of towing equipment); *Barb v. Farmers Insurance Exchange*, 281 S.W.2d 297 (Mo. 1955) (res ipsa loquitur applicable to codefendants who shared control of passageway where falling boxes struck and injured plaintiff); *Meny v. Carlson*, 6 N.J. 82, 77 A.2d 245 (1950) (plaintiff injured in a fall could maintain negligence action based on res ipsa loquitur in an action against the partnership which supplied, and the corporation which assembled, a defective scaffold); *Schroeder v. City & County Savings Bank, Albany*, 293 N.Y. 370, 57 N.E.2d 57 (1944) (res ipsa loquitur applied to three defendants who were in joint control of barricade which collapsed); *Bond v. Otis Elevator Company*, 388 S.W.2d 681 (Tex. 1965) (negligence action, based on res ipsa loquitur, was maintainable against codefendants who jointly controlled plummeting elevator). See, also, generally, Annot., Applicability of Res Ipsa Loquitur in Case of Multiple, Nonmedical Defendants—Modern Status, 59 A.L.R.4th 201 (1988).

*Service Merchandise.*

Service Merchandise contends that it lacked exclusive control because Service Merchandise had contracted with Sylvania for periodic inspection and service of the store's overhead lighting fixtures, Service Merchandise had not occupied the store throughout the building's existence, and Service Merchandise's landlord had a right to show the premises to prospective purchasers.

First, we examine Service Merchandise's relationship to the premises where the accident occurred.

As a business possessor of real estate, Service Merchandise has a duty to exercise reasonable care to keep the premises safe for its business invitees. See, *Havlicek v. Desai*, 225 Neb. 222, 403 N.W.2d 386 (1987); *Lund v. Mangelson*, 183 Neb. 99, 158 N.W.2d 223 (1968). Moreover, a business possessor's duty to use reasonable care for invitees on the premises is a nondelegable duty. See *Simon v. Omaha P. P. Dist.*, 189 Neb. 183, 202 N.W.2d 157 (1972). See, also, *Ft. Lowell-NSS Ltd. Partnership v. Kelly*, 166 Ariz. 96, 800 P.2d 962 (1990); *Bryant v. Sherm's Thunderbird Mkt.*, 268 Or. 591, 522 P.2d 1383 (1974); *Stevens v. Bow Mills Methodist Church*, 111 N.H. 340, 283 A.2d 488 (1971); Restatement (Second) of Torts § 422 (1965). Also, Service Merchandise, a business possessor of real estate, cannot shift the duty of reasonable care for the premises to an agent or independent contractor employed to maintain all or part of the premises under the possessor's control. See *Nownes v. Hillside Lounge, Inc.*, 179 Neb. 157, 137 N.W.2d 361 (1965). See, also, *Colmenares Vivas v. Sun Alliance Ins. Co.*, 807 F.2d 1102 (1st Cir. 1986); *Domany v. Otis Elevator Company*, 369 F.2d 604 (6th Cir. 1966); *Rogers v. Dorchester Assoc.*, 32 N.Y.2d 553, 300 N.E.2d 403, 347 N.Y.S.2d 22 (1973).

As we have stated:

[O]ne employing an independent contractor may be liable for damages resulting from injury caused by the contractor's negligence, when, by rule of law or statute, the duty to guard against the risk is "nondelegable." A nondelegable duty means that an employer of an independent contractor . . . by assigning work consequent to a duty, is not relieved from liability arising from the delegated duties negligently performed. [Citation omitted.] As a result of a nondelegable duty, the responsibility or ultimate liability for proper performance of a duty cannot be delegated, although actual performance of the task required by a nondelegable duty may be done by another. [Citation omitted.] One on whom a nondelegable duty is enjoined may not, by employing an independent contractor, escape vicarious

responsibility and liability for proper performance of that nondelegable duty.

*Foltz v. Northwestern Bell Tel. Co.*, 221 Neb. 201, 213, 376 N.W.2d 301, 309 (1985). Liability for breach of a nondelegable duty is an exception to the general rule that one who employs an independent contractor is not liable for the independent contractor's negligence. See *Sullivan v. Geo. A. Hormel and Co.*, 208 Neb. 262, 303 N.W.2d 476 (1981). See, also, Prosser and Keeton on the Law of Torts, *Independent Contractors* § 71 (5th ed. 1984) (employer's vicarious liability for independent contractor's breach of the employer's nondelegable duty). Therefore, even assuming that Sylvania was negligent and that Sylvania's negligence was the proximate cause of Anderson's injuries, "exclusive control" for the purposes of res ipsa loquitur remained with Service Merchandise.

Service Merchandise's "exclusive control" is similarly not defeated by the fact that the building existed before Service Merchandise's occupancy under its lease or by the fact that Service Merchandise's landlord has some limited right to potential entry under the lease. Service Merchandise's nondelegable duty of safe premises exists as the result of Service Merchandise's unquestioned status as a business possessor of land and Anderson's unquestioned status as a business invitee of Service Merchandise. See *Kliewer v. Wall Constr. Co.*, 229 Neb. 867, 429 N.W.2d 373 (1988). See, also, *Galloway v. Bankers Trust Co.*, 420 N.W.2d 437 (Iowa 1988); *Bovis v. 7-Eleven, Inc.*, 505 So. 2d 661 (Fla. App. 1987); *Jarr v. Seeco Construction Co.*, 35 Wash. App. 324, 666 P.2d 392 (1983); *Brookins v. U.S.*, 722 F. Supp. 1214 (E.D. Pa. 1989). See, further, Restatement (Second) of Torts § 328 E (1965).

To summarize, Service Merchandise was in "exclusive control" of the premises for purposes of res ipsa loquitur because Service Merchandise possessed and, therefore, controlled the site of the accident and had a nondelegable duty to exercise reasonable care for the protection of Anderson, a business invitee. Since Anderson has established all the elements of res ipsa loquitur, including Service Merchandise's "exclusive control" as an element of res ipsa loquitur, a genuine issue of material fact existed in Anderson's negligence action

against Service Merchandise. Therefore, the district court erred by granting a summary judgment to Service Merchandise.

## CONCLUSION

Our decision in no way affects Service Merchandise's action against Sylvania for "indemnity and/or contribution," a matter which is not before the court in Anderson's appeal. Our opinion today involves only Anderson's negligence actions, based on res ipsa loquitur, against Service Merchandise and Sylvania.

For the foregoing reasons, we affirm the district court's judgment granting summary judgment to Sylvania and dismissing Anderson's action against Sylvania, but we reverse the district court's judgment granting summary judgment to Service Merchandise and dismissing Anderson's action against Service Merchandise and remand Anderson's action against Service Merchandise to the district court for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

WHITE, J., not participating.