Arthur and Linda Lamprecht, appellants,
v. Brent Schluntz and Gerald
Schluntz, appellees.

___ N.W.2d ___

Filed October 20, 2015.    No. A-14-995.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

4. **Rules of Evidence: Appeal and Error.** When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

5. **Negligence: Presumptions.** The doctrine of res ipsa loquitur is an exception to the general rule that negligence cannot be presumed. Res ipsa loquitur is a procedural tool that, if applicable, allows an inference of a defendant's negligence to be submitted to the fact finder, where it may be accepted or rejected.

6. **Negligence: Proof.** The essence of res ipsa loquitur is that the facts speak for themselves and lead to a proper inference of negligence by the fact finder without further proof.

7. ____: ____. There are three elements that must be met for res ipsa loquitur to apply: (1) The occurrence must be one which would not, in

the ordinary course of things, happen in the absence of negligence; (2) the instrumentality which produces the occurrence must be under the exclusive control and management of the alleged wrongdoer; and (3) there must be an absence of explanation by the alleged wrongdoer.

8. **Negligence: Evidence.** When deciding whether res ipsa loquitur applies, a court must determine whether evidence exists from which reasonable persons can say that it is more likely than not that the three elements of res ipsa loquitur have been met. If such evidence is presented, then there exists an inference of negligence which presents a question of material fact, and summary judgment is improper.

9. **Negligence: Proof.** The court should not weigh the evidence to determine whether res ipsa loquitur applies. Instead, the court must determine whether there is sufficient evidence from which reasonable persons could find that it is more likely than not that the three elements of res ipsa loquitur have been proved and that it is therefore more likely than not that there was negligence associated with the event.

10. **Negligence: Presumptions: Proof.** As a general rule, the mere occurrence of a fire, with resultant damage, does not raise a presumption of negligence, although the circumstances under which a fire occurs may sometimes be such as to justify the application of the doctrine res ipsa loquitur and impose upon the defendant the burden of proving his freedom from fault.

11. **Negligence.** Res ipsa loquitur does not apply where the occurrence alone, without more, rests on conjecture, or where the accident was just as reasonably attributable to other causes as to the negligence of the defendant.

12. **Negligence: Presumptions.** Liability cannot result from an inference upon an inference or from a presumption upon a presumption; an inference of negligence could arise only from an established foundation fact and not from a further inference.

13. **Negligence.** The doctrine of res ipsa loquitur is of limited and restricted scope and should ordinarily be applied sparingly.

14. **Appeal and Error.** An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it.

15. **Affidavits.** Under the terms of Neb. Rev. Stat. § 25-1334 (Reissue 2008), affidavits offered for the truth of a particular fact (1) shall be made on personal knowledge, (2) shall set forth such facts as would be admissible into evidence, and (3) shall show affirmatively that the affiant is competent to testify to the matters stated therein.

16. **Trial: Witnesses.** The opinion of a lay witness, formed without personal knowledge, would be inadmissible at trial and, therefore, would not satisfy the requirements of Neb. Rev. Stat. § 25-1334 (Reissue 2008).

Appeal from the District Court for Furnas County: David Urbom, Judge. Affirmed.

Tony Brock, of Brock Law Offices, P.C., for appellants.

James B. Luers and Krista M. Carlson, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., for appellees.

Moore, Chief Judge, and Pirtle and Bishop, Judges.

Bishop, Judge.

Arthur Lamprecht and his wife, Linda Lamprecht, brought this action against Brent Schluntz and his brother, Gerald Schluntz, seeking compensation for property damage that the Lamprechts sustained from a fire that originated on Brent's farm during a wheat harvest. The Lamprechts' sole theory of recovery was premised on the doctrine of res ipsa loquitur. The district court for Furnas County granted summary judgment in favor of the Schluntzes, and the Lamprechts now appeal. We affirm.

## BACKGROUND

On a hot and windy day in June 2012, Brent, Gerald, and their employee, Christopher Joppa, were harvesting wheat on Brent's real property in Furnas County. As part of the harvesting operation, Joppa was operating a Case 9260 tractor with a grain cart attached. Brent and Gerald were operating combines. Brent and Gerald jointly owned the wheat, tractor, and combines, and Gerald was the sole owner of the grain cart.

According to Brent, he, Gerald, and Joppa were doing "back-landing" in the wheatfield; Brent was operating a combine and was heading west, Gerald was in a combine heading east, and Joppa was in the tractor with the attached grain cart heading to unload Gerald's combine. Brent testified that "as soon as the grain cart pulled up," he saw a "flash . . . underneath the tractor." Brent testified that he "pulled out and tried to wave at those guys, because they couldn't see it, to get out and try to stomp it out or get out of there, but it just exploded." Brent called the fire department immediately, and

he, Gerald, and Joppa drove their respective pieces of farm equipment to the road. Brent testified the fire spread "like gasoline" although they attempted to "disk" the fields to create firebreaks to stop the fire. Several firefighters and other personnel responded to the fire around 3:30 p.m. Joe Kresser, the Stamford, Nebraska, fire chief, testified that when he arrived on the scene, the fire was in the wheatfield east of Brent's house.

Brent's property was located approximately 2 miles south and half a mile west of the Lamprechts' farm in Oxford, Nebraska, where Arthur raised corn, wheat, beans, and cattle. On the day of the fire, Arthur and his son were harvesting on Arthur's property and had gone to Holdrege, Nebraska, to pick up Arthur's truck from the repair shop. When they returned to Arthur's farm around 4:30 p.m., Arthur saw smoke coming in their direction from the south. When Arthur got to where the fire was located, his wheat stubble was on fire and it had burned through a couple neighboring fields. Arthur attempted to shred his crops to make a firebreak or "disk out the fire." Arthur testified that the fire came so fast he "couldn't get in front of it" and that it went into his pasture. Arthur continued to disk lengthwise to the fire so it would not burn sideways, and one of his neighbors also helped disk with his tractor. Arthur testified that there were "lots of people there from the fire departments and the neighbors" trying to put the fire out.

Kresser testified that when he first arrived at Brent's property to put out the fire, he spoke to Brent to get his opinion about what caused the fire. Kresser testified that a field fire can sometimes start when a "bearing" "go[es] out or get[s] hot or something of that sort, and somebody can drive in a field, an exhaust pipe can start it." Kresser recalled that Brent at that time thought the fire was caused by an electrical short on the tractor. Kresser did not examine the tractor because by the time the fire was under control enough to where he felt comfortable leaving the scene, the tractor was no longer in the field and Brent "wasn't around."

Kresser authored a fire log the day after the fire. According to the fire log, the fire burned approximately 1,200 acres and was driven by high winds from the south and temperatures in excess of 100 degrees Fahrenheit. The fire log notes that the property owner, Brent, suspected the cause of the fire was an electrical short on the tractor pulling the grain cart and that upon inspection there was a "burnt wire" on the tractor.

According to Brent, he asked Joppa what started the fire, but "[h]e didn't know, either." Brent told Joppa he saw "[the fire] come down from underneath the tractor." Brent recalled that he told Kresser that he saw a "burnt wire" underneath the tractor, but he did not know "if it was from the fire coming up on it." None of the farm equipment, including the tractor, were "burn[ed] up" in the fire.

Brent testified that when he called his insurance company, "they found an expert to come out to examine the tractor," but Brent did not recall who the expert was and did not testify as to what the expert's conclusion was. When Brent was asked if he agreed that wheatfields do not typically spontaneously combust, he agreed that "[u]sually something starts everything." Brent had never personally seen a wheatfield spontaneously combust and did not know anyone who had seen a wheatfield spontaneously combust.

Joppa testified that all he remembers about the start of the fire was that he was getting ready to unload Brent's or Gerald's combine, when he saw one of them waving and signaling him to get out. Joppa looked in the mirror above the steering wheel of the tractor and saw flames, and he then "took off out of the field." Joppa did not see the fire start and did not know for sure what started the fire, but "we were looking at the tractor." Joppa recalled that the Schluntzes' mechanic told him that "the insurance adjuster was coming down to look at the equipment . . . that I was using" and that "they were looking at . . . the differentials. Something to do with the differentials." Joppa explained that, in a four-wheel-drive tractor (like the type he was driving), a differential

switch box "locks your differential so you can pull — all four tires can pull at the same time."

Joppa testified that he grew up in North Dakota on a farm and that during his life, he had seen two wildfires start during harvest; Joppa testified that one of those fires was started by a bearing that "went out in the combine" and "[o]verheated and started the fire." Joppa agreed that fires in wheatfields are not normal occurrences, although "they do have spontaneous combustions" caused by too much heat. However, Joppa then testified, "I know that didn't happen that day," followed by his statement that "it could have happened that day, I guess. I mean, I don't think it would have. I know it was really hot."

Although Joppa is not a mechanic and has no training as a mechanic, he has experience changing oil and filters, and greasing farm equipment, and he testified that he had previously changed the oil and greased the tractor at issue. Joppa testified that their farm equipment is "serviced every morning." Joppa stated that he had no reason to believe that the tractor he was driving was dangerous or unsafe on the day of the fire and that he had no reason to believe there was a mechanical defect in the tractor he was driving.

Arthur did not know what started the fire, other than what he read in the fire log authored by Kresser.

The Lamprechts filed a complaint against Brent on May 30, 2013. The Lamprechts initially alleged two theories of recovery: negligence for failure to properly maintain and repair the farming machinery and res ipsa loquitur.

Brent filed a motion for summary judgment on January 31, 2014.

On March 10, 2014, the Lamprechts filed a motion for leave to file an amended complaint, which leave the court granted on March 20. The Lamprechts filed an amended complaint on March 31, containing the same allegations as the first complaint, but adding Gerald as a defendant.

The Lamprechts filed a motion for leave to file a second amended complaint on September 25, 2014, which leave the

court granted on October 27. The Lamprechts filed a second amended complaint the same day, alleging that "[t]his action arises out of the negligent maintenance and/or operation of farm equipment that started a fire which damaged the property of [the Lamprechts]. The matter is being prosecuted on the theory of res ipsa loquitur."

A summary judgment hearing was held on September 29, 2014. Depositions of Brent, Arthur, Kresser, and Joppa were received into evidence. The Lamprechts offered an affidavit from Arthur into evidence, in which he stated that he had been farming in Nebraska for over 50 years and that he has operated and maintained tractors and other equipment used to harvest wheat. Arthur averred that in his experience, farm equipment will not start a fire unless it is negligently maintained and/or operated. Arthur further averred that tractors and combines are universally used to harvest wheat, and fires and explosions caused by that equipment does not in the ordinary course of things happen unless there was negligence by the owners and/or operators of that equipment. The Schluntzes objected to Arthur's affidavit on the bases that "[Arthur] is a farmer as alleged in his affidavit, but [Neb. Rev. Stat. §] 27-701 [(Reissue 2008)] require[s] experts to render opinions like [Arthur] is trying to do in this case"; that Arthur's affidavit "offer[ed] a legal opinion with regards to whether there was negligence"; that Arthur did not base his opinion on firsthand observation or knowledge; that there was insufficient foundation, method, or basis for how Arthur arrived at his conclusion; and that Arthur's opinion "even contradicts his own expert, . . . Kresser," and also contradicted Joppa's testimony. The court reserved ruling on the receipt of Arthur's affidavit.

On October 28, 2014, the court entered an order on the summary judgment motion. The court stated that "[t]he [Schluntzes'] objection to the receipt of [Arthur's affidavit] is sustained and [Arthur's affidavit] is not received." The court's order then made various factual findings, including the following: The tractor ignited the fire, the Schluntzes "properly

maintained and kept their equipment in good repair," and "[t]he equipment was serviced every morning before harvesting started."

The court concluded that the instant case resembled the case of *Security Ins. Co. v. Omaha Coca-Cola Bottling Co.*, 157 Neb. 923, 62 N.W.2d 127 (1954), wherein the Nebraska Supreme Court concluded res ipsa loquitur did not apply where a building was damaged by smoke from a fire in a lunchroom that housed a Coca-Cola vending machine. The district court in the instant case concluded that based upon the evidence received, there was "not sufficient evidence from which reasonable persons could find it more likely than not that there was negligence on the part of the [Schluntzes]." The court found that no genuine issue of material fact existed and that the Schluntzes were entitled to judgment as a matter of law. Summary judgment was granted in favor of the Schluntzes; the district court dismissed the Lamprechts' second amended complaint.

The Lamprechts now appeal.

## ASSIGNMENTS OF ERROR

The Lamprechts assign as error, summarized and restated, that the district court erred (1) in granting summary judgment based on its conclusion that res ipsa loquitur did not apply, (2) in making certain findings of fact, and (3) in excluding Arthur's affidavit.

## STANDARD OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *O'Brien v. Bellevue Public Schools*, 289 Neb. 637, 856 N.W.2d 731 (2014). In reviewing a summary judgment, the court views the evidence in the light most favorable to the party against whom the judgment was

granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

[3,4] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *Griffith v. Drew's LLC*, 290 Neb. 508, 860 N.W.2d 749 (2015). When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Erickson v. U-Haul Internat.*, 278 Neb. 18, 767 N.W.2d 765 (2009).

## ANALYSIS

[5,6] The Lamprechts initially alleged two theories of recovery: (1) negligence for failure to properly maintain and repair the farming machinery and (2) res ipsa loquitur. The Lamprechts subsequently abandoned their negligence theory and amended their complaint to proceed solely on the theory of res ipsa loquitur. The doctrine of res ipsa loquitur is an exception to the general rule that negligence cannot be presumed. *McLaughlin Freight Lines v. Gentrup*, 281 Neb. 725, 798 N.W.2d 386 (2011). Res ipsa loquitur is a procedural tool that, if applicable, allows an inference of a defendant's negligence to be submitted to the fact finder, where it may be accepted or rejected. *Id*. The essence of res ipsa loquitur is that the facts speak for themselves and lead to a proper inference of negligence by the fact finder without further proof. *Swierczek v. Lynch*, 237 Neb. 469, 466 N.W.2d 512 (1991).

[7] There are three elements that must be met for res ipsa loquitur to apply: (1) The occurrence must be one which would not, in the ordinary course of things, happen in the absence of negligence; (2) the instrumentality which produces the occurrence must be under the exclusive control and management of the alleged wrongdoer; and (3) there must be an absence of explanation by the alleged wrongdoer. *McLaughlin Freight Lines, supra*.

[8,9] When deciding whether res ipsa loquitur applies, a court must determine whether evidence exists from which reasonable persons can say that it is more likely than not that the three elements of res ipsa loquitur have been met. *Id*. If such evidence is presented, then there exists an inference of negligence which presents a question of material fact, and summary judgment is improper. *Id*. The court should not weigh the evidence to determine whether res ipsa loquitur applies. *Id*. Instead, the court must determine whether there is sufficient evidence from which reasonable persons could find that it is more likely than not that the three elements of res ipsa loquitur have been proved and that it is therefore more likely than not that there was negligence associated with the event. *Id*.

Our analysis turns on the first element of res ipsa loquitur, that the occurrence must be one which would not, in the ordinary course of things, happen in the absence of negligence. See *McLaughlin Freight Lines, supra*. Our Supreme Court has stated that this element "'is of course only another way of stating an obvious principle of circumstantial evidence: that the event must be such that in the light of ordinary experience it gives rise to an inference that someone must have been negligent.'" *Anderson v. Service Merchandise Co.*, 240 Neb. 873, 880, 485 N.W.2d 170, 175 (1992).

[10] As a general rule, the mere occurrence of a fire, with resultant damage, does not raise a presumption of negligence, although the circumstances under which a fire occurs may sometimes be such as to justify the application of the doctrine res ipsa loquitur and impose upon the defendant the burden of proving his freedom from fault. See *Security Ins. Co. v. Omaha Coca-Cola Bottling Co.*, 157 Neb. 923, 62 N.W.2d 127 (1954). In *Security Ins. Co.*, the Nebraska Supreme Court affirmed a directed verdict in favor of the defendant bottling company, concluding that res ipsa loquitur did not apply to the plaintiff-insurer's claim that the bottling company had negligently permitted its vending machine to catch fire. At some point during a day when no one was in the building, a

fire broke out in the lunchroom where the vending machine was located. The evening janitor found the building filled with smoke and damage, but did not see a fire, and noticed the vending machine and adjacent wooden pop cases had been completely burned, leaving only the metal shell of the machine. Nothing else in the lunchroom had caught fire. The court in *Security Ins. Co.* concluded that the doctrine of res ipsa loquitur was of limited and restricted scope and should ordinarily be applied sparingly, and the court considered the doctrine inapplicable to the case before it, finding no precedent wherein a party had even attempted to apply the doctrine to a like situation.

Our research has revealed no Nebraska cases wherein the doctrine of res ipsa loquitur was utilized against a defendant in an action for damages resulting from a field fire allegedly caused by the defendant's tractor or other farm equipment where the exact cause of the fire was unknown. Outside of Nebraska, however, res ipsa loquitur has been rejected under circumstances similar to those in the case before us.

In *Hamilton v. Smith*, 163 Colo. 88, 428 P.2d 706 (1967), owners of a wheat crop which had been destroyed in a fire that was allegedly started by a truck which had been used by the defendants in harvesting the wheat were held not to be entitled to rely on the doctrine of res ipsa loquitur. Viewing the evidence in the light most favorable to the crop owners, the court in *Hamilton* found that the fire had broken out in the field either near or under the defendants' truck and that there was a high stubble on the field which could have ignited on contact with a hot exhaust pipe. The plaintiffs, it concluded, had failed to produce any proof, beyond pure speculation, that the truck had started the fire or that there had been some negligence on the part of the defendants. Res ipsa loquitur, it ruled, did not apply where proof of the occurrence alone, without more, still rested on conjecture or where the accident was just as reasonably attributable to other causes as to the negligence of the defendant.

Similarly, in *Emigh v. Andrews*, 164 Kan. 732, 191 P.2d 901 (1948), the plaintiff owner and lessee of a wheatfield could not rely on res ipsa loquitur to state a cause of action against a truck owner, whose truck allegedly started a fire that burned the plaintiff's wheat crop. In that case, a fire started in wheat stubble at a point where the truck had just passed over, and no other persons or vehicles had been near that point. The *Emigh* court held that, at best, the facts raised a presumption that the truck caused the fire, but a mere presumption could not support a further inference that the truck had been defective or improperly operated. The court in *Emigh* further noted that courts were reluctant to draw an inference of negligence from the starting of fires because fires are frequent occurrences and, in many cases, result without negligence on the part of anyone. The court noted that the established rule was that liability cannot result from an inference upon an inference or from a presumption upon a presumption, and concluded that, in the case before it, the presumption that the truck caused the fire "cannot well be said to speak 'for itself.'" *Id.* at 736, 191 P.2d at 904.

In *Anderton v. Downs*, 459 S.W.2d 101 (Mo. App. 1970), res ipsa loquitur was held not to apply to the plaintiff-farmer's claim for damages to 35 acres of his wheat, damaged by a fire that had broken out along the path that the defendant's truck had taken in the plaintiff's wheatfield. Although there was evidence that the truck had caught fire on a previous occasion, and the farmer alleged that the truck owner had been negligent in failing to repair known defects in the truck's electrical and exhaust systems, the court found that res ipsa loquitur was not applicable, in part, because the court found that the plaintiff-farmer had failed to establish the cause of the fire. The mere occurrence of a fire, the court stated, does not prove negligence or raise any presumption as to the cause of the fire.

In *National Union Fire Insurance Company v. Elliott*, 298 P.2d 448 (Okla. 1956), the court held that res ipsa loquitur did not apply to an action filed by the insurer of a wheat crop

destroyed by fire that was allegedly caused by the defendant's truck while harvesting wheat. The defendant had left one of his trucks in the field, and when he returned, he noticed that the wheat stubble around the truck was on fire and the truck was engulfed in flames. The insurer argued that there was sufficient evidence to bring res ipsa loquitur into play because the truck was 6 years old, and was likely to have wiring defects and other malfunctions, and because the truck was shortly ablaze after it had been parked on the field away from the roadway where the fire could not have been started by intervening agencies. The court disagreed and refused to apply res ipsa loquitur, concluding that an inference of negligence could arise only from an established foundation fact and not from a further inference; the mere occurrence of an accident under unexplained circumstances would not support the application of res ipsa loquitur.

In *Thurman v. Johnson*, 330 S.W.2d 179 (Mo. App. 1959), a barn was destroyed by fire that originated in the defendant's truck, which the defendant had driven onto the property to pick up a delivery of the plaintiff-owner's oats. The truck caught fire after getting stuck in a rut as the driver brought the truck into the barn. The owner sought to recover damages for the fire under the theory of res ipsa loquitur, which the court in *Thurman* rejected. The court stated that although the occurrence was "certainly one that does not ordinarily happen," such an occurrence was not usually caused by lack of due care by the owner-operator. *Id.* at 182.

[11] In reviewing the above cases, it is clear that unexplained fires can occur during harvesting and farming operations, on or around trucks or other equipment used in farming operations. However, as observed by those courts, the mere fact that the fire occurred in such a manner does not warrant an inference of negligence. Res ipsa loquitur does not apply where the occurrence alone, without more, rests on conjecture, or where the accident was just as reasonably attributable to other causes as to the negligence of the defendant. See *Hamilton v. Smith*, 163 Colo. 88, 428 P.2d 706 (1967). See, also, *Thurman,*

*supra*. Courts are reluctant to draw an inference of negligence from the starting of fires because fires are frequent occurrences and, in many cases, resulted without negligence on the part of anyone. See *Emigh v. Andrews*, 164 Kan. 732, 191 P.2d 901 (1948). See, also, *Thurman, supra*.

We note that there are cases where res ipsa loquitur has been applied to vehicles alleged to have started a fire. In one case, for example, a truck backed into a barn filled with hay and allegedly caused a fire from its hot exhaust gas and sparks; the court found that fires do not ordinarily occur during the loading or unloading of bales of hay in a barn absent someone's negligence. See *Seeley v. Combs*, 65 Cal. 2d 127, 416 P.2d 810, 52 Cal. Rptr. 578 (1966). In another case where a vehicle was alleged to have started a forest fire, *Roddiscraft, Inc. v. Skelton Logging Co.*, 212 Cal. App. 2d 784, 28 Cal. Rptr. 277 (1963), a logging tractor that had been used in proximity to the fire had not been equipped with a spark arrester and had been smoking excessively. The court concluded that this supported an inference of negligence because as a matter of common knowledge, forest fires do not occur, other than perhaps from lightning, unless someone has been negligent, and therefore the cause of this forest fire was more likely than not from the negligence of the logging tractor owner.

[12,13] In Nebraska, as a general rule, the mere occurrence of a fire, with resultant damage, does not raise a presumption of negligence, unless the circumstances under which a fire occurs justify the application of res ipsa loquitur. See *Security Ins. Co. v. Omaha Coca-Cola Bottling Co.*, 157 Neb. 923, 62 N.W.2d 127 (1954). In the instant case, the only evidence presented with respect to the fire's cause was that Brent saw a "flash" underneath the tractor and that he found a "burnt wire" under the tractor. Kresser testified that a field fire can start when a bearing goes out or gets hot or that an exhaust pipe can start a fire, and Brent thought the fire could have been caused by an electrical short on the tractor. However, none of those explanations are ones which are more likely than not

explained by negligence; and the mere fact that a fire started under Brent's tractor does not lead to an inference that there was negligence. Even though a fire in a wheatfield may not ordinarily happen, such an occurrence is not so unusual as to justify an inference of negligence based upon an alleged lack of due care by the owner and/or operator of a tractor or other equipment being used to harvest the wheat. As with the cases cited above, we too are reluctant to draw an inference of negligence from the mere happening of the fire, because fires are frequent occurrences and, in many cases, result without negligence on the part of anyone. See *Emigh v. Andrews*, 164 Kan. 732, 191 P.2d 901 (1948). Further, as in *Emigh*, even when the facts may raise a presumption that the vehicle caused the fire, that mere presumption cannot support a further inference that the vehicle was defective or improperly maintained or operated. See *id*. (liability cannot result from inference upon inference or from presumption upon presumption). See, also, *National Union Fire Insurance Company v. Elliott*, 298 P.2d 448 (Okla. 1956) (inference of negligence could arise only from established foundation fact and not from further inference). Moreover, we bear in mind that the doctrine of res ipsa loquitur is of limited and restricted scope and should ordinarily be applied sparingly. *Security Ins. Co., supra*. We conclude that fires like the one at issue can occur in the ordinary course of things in the absence of negligence and that thus, the Lamprechts cannot and did not establish the first element of res ipsa loquitur.

[14] Our conclusion above is not based upon any of the findings of fact that the Lamprechts argue were error by the district court. We therefore find it unnecessary to address the Lamprechts' assignment of error related to the district court's factual findings. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it. *Papillion Rural Fire Prot. Dist. v. City of Bellevue*, 274 Neb. 214, 739 N.W.2d 162 (2007).

Because the Lamprechts cannot establish the first element of res ipsa loquitur, we agree with the district court that the

doctrine of res ipsa loquitur is inapplicable as a matter of law, and affirm summary judgment in favor of the Schluntzes.

The Lamprechts also assign as error the district court's exclusion of Arthur's affidavit offered into evidence at the summary judgment hearing. In his affidavit, Arthur stated that he had been farming in Nebraska for over 50 years, that he has operated and maintained tractors and other farm equipment used to harvest wheat, and that in his experience, farm equipment will not start a fire unless it is negligently maintained and/or operated. Arthur further averred that tractors and combines are universally used to harvest wheat and that fires and explosions caused by such equipment do not in the ordinary course of things happen unless there was negligence by the equipment's owners and/or operators.

[15,16] Under the terms of Neb. Rev. Stat. § 25-1334 (Reissue 2008), affidavits offered for the truth of a particular fact (1) shall be made on personal knowledge, (2) shall set forth such facts as would be admissible into evidence, and (3) shall show affirmatively that the affiant is competent to testify to the matters stated therein. *Whalen v. U S West Communications*, 253 Neb. 334, 570 N.W.2d 531 (1997). Statements in affidavits as to opinion, belief, or conclusions of law are of no effect. *Id.* Arthur's testimony was that of a lay witness. The opinion of a lay witness, formed without personal knowledge, would be inadmissible at trial and, therefore, would not satisfy the requirements of § 25-1334. See *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999). Arthur's statements in his affidavit were merely legal conclusions that fires do not start by farm equipment without negligence. Such statements were properly excluded by the district court.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court.

AFFIRMED.