[Civ. No. 12300. First Dist., Div. Two. Feb. 2, 1943.]

WILMA TAYLOR et al., Respondents, v. PACIFIC GAS & ELECTRIC COMPANY (a Corporation), Appellant.

Thos. J. Straub, W. H. Spaulding, John J. Briare and Ezra Decoto for Appellant.

Appelbaum & Mitchell and John Jewett Earle for Respondents.

SPENCE, J.—Plaintiffs Robert M. Taylor and Wilma Taylor are husband and wife. Plaintiff Robert E. Taylor is their minor son. This action was brought to recover damages alleged to have been sustained by plaintiffs when the automobile of plaintiffs ran into a pole of the defendant company under the circumstances hereinafter set forth. The cause was tried by a jury, plaintiffs had judgment and defendant appeals.

The accident occurred on Hopkins Street in the city of Oakland, which street runs in a general northerly and southerly direction in the vicinity in question. The defendant, a public utility corporation, maintains its high voltage power lines upon poles which are located just inside the curb line along the westerly side of said street. The poles are the ordinary heavy wooden poles customarily used for that purpose and are about 50 feet in height. On the day of the accident, one of the high voltage wires broke and the two ends of said broken wire fell to the street. Mrs. Taylor had been driving along Hopkins Street in a northerly direction. She testified that she was traveling at about 35 miles per hour in a 45 miles per hour zone at the time that the wire broke and fell into the street in front of her. In this sudden emergency, she swung her car to the left or in a westerly direction, put on her brakes but nevertheless ran into the pole in question. Defendant briefly summarizes her testimony as follows: "There is no dispute that the record shows that respondent Wilma Taylor testified that as she was driving an automobile along the street she saw suddenly a wire falling and emitting flashes ahead practically in her path and that in seeking to avoid it she swung her car to the left across the left half of the highway, up onto the sidewalk and into that one of appellant's poles from which the wire had broken. It was admitted to be appellant's pole and wire." The testimony of Mrs. Taylor was corroborated by several disinterested witnesses.

Upon the trial, defendant proceeded upon the theory that the collision of the automobile with the pole had not been caused by the breaking of the wire but, on the contrary, the breaking of the wire had been caused by the collision of

the automobile with the pole. Defendant introduced some evidence, principally certain expert testimony, tending to support this theory and this issue of fact was clearly presented to the jury by an instruction reading, "If you believe from the evidence that the wire was caused to fall as the result of the automobile driven by Mrs. Taylor striking the pole, you must then return your verdict in favor of the defendant." The jury, by its verdict in favor of plaintiffs, impliedly found against defendant on this issue of fact thereby repudiating defendant's theory. It is conceded that there was abundant evidence to sustain such implied finding.

On this appeal, defendant contends that the trial court erred in giving any instructions on the doctrine of res ipsa loquitur. Defendant first argues that "no exclusive control of this pole line was proved" as the pole line was along a public street just inside the curb line and "it was open to influences and forces entirely beyond the control of appellant." It is admitted, however, that the pole line was owned and maintained exclusively by defendant. It therefore had the exclusive right of control over said pole line and this is all that is required to satisfy the first prerequisite for the application of the doctrine. (*Van Horn* v. *Pacific Refining etc. Co.*, 27 Cal.App. 105 [148 P. 951]; *Helms* v. *Pacific Gas & Electric Co.*, 21 Cal.App.2d 711 [70 P.2d 247].) Defendant further argues that "No proof was made that this kind of accident does not ordinarily happen without negligence of appellant." We are of the view, however, that it is a matter of common knowledge that high voltage wires do not ordinarily fall upon the highway, in the manner in which plaintiffs' evidence showed that this wire fell, without negligence on the part of those in control of such wires and that therefore plaintiffs were not required to make such proof. (See *Diller* v. *Northern Calif. Power Co.*, 162 Cal. 531 [123 P. 359, Ann.Cas. 1913D, 908]; *Langazo* v. *San Joaquin L. & P. Corp.*, 32 Cal.App.2d 678 [90 P.2d 825]; *Burns* v. *Holyoke Street Ry. Co.*, 253 Mass. 443 [149 N.E. 127]; *Simmons* v. *Commonwealth Edison Co.*, 203 Ill.App. 367; *Union Gas & Electric Co.* v. *Waldsmith,* 31 OhioApp. 118 [166 N.E. 588]; 18 Am. Jur. 504-506.) Defendant further argues that "assuming this doctrine is otherwise here applicable, any inference of appellant's negligence was here dispelled by 'clear, positive and uncontradicted evidence which is not open to doubt.'"

It is a sufficient answer to this argument to point out that the evidence upon which defendant relies was not of the class described. Said evidence was that of experts produced by defendant who gave their opinions, in response to hypothetical questions, that the falling of the wire was caused by the collision of the automobile with the pole. The plaintiffs, however, produced expert testimony to the effect that the falling of the wire could not have been caused by such collision. Defendant now states that its explanation of the cause of the fall of the wire was "either the impact of this automobile or *some other force* that started a violent swaying of this pole to tear the wires loose." As above stated, the direct evidence of several witnesses, which was accepted by the jury, shows that the impact of the automobile with the pole followed rather than preceded the falling of the wire. As to any "other force" for which the defendant was not responsible, the record is devoid of any evidence on the subject. In the absence of such evidence, even defendant's experts were forced to concede that if the wire fell before the automobile collided with the pole, some defect caused the wire to fall. For example one of defendant's experts was asked on cross-examination, "Now, assuming the wires were already down when she approached, then your answer would have to be that there was something defective up there wouldn't it?" He answered, "Yes."

We conclude that the doctrine of res ipsa loquitur was applicable under the facts presented by the record; that we cannot say that the inference of negligence was dispelled by the testimony introduced; and that it was therefore proper for the trial court to instruct the jury with respect to said doctrine.

Defendant further contends that even assuming that it was proper to instruct the jury with respect to said doctrine, the trial court committed prejudicial error in the instructions given to the jury on that subject. The trial court instructed the jury quite fully, giving some instructions proposed by plaintiffs and some instructions proposed by defendant with respect to said doctrine. We find no error, and in any event no prejudicial error, in the instructions given and it would serve no useful purpose to set forth said instructions here. As above stated, plaintiffs were entitled to the benefit of the doctrine of res ipsa loquitur. In explanation of the cause of the

falling of the wire, defendant offered only one theory which found any support in the evidence to show its freedom from negligence, to wit: the theory that the falling of the wire had been caused by the collision of the automobile with the pole. That theory was repudiated by the jury. We believe that defendant's claims of error in the instructions are hyper-technical and that there is no likelihood that the result would have been different if instructions had been given in the manner which defendant asserts would have been in all respects technically correct.

The only remaining contention of defendant is that the trial court committed prejudicial error in striking out the opinion of an expert witness. This assignment of error is based upon the portion of the record which reads as follows: "Q. From your investigation are you able to form an opinion as to what caused that wire to burn and fall to the ground? A. The force of the impact of the automobile against the pole knocked the wires out of the insulators. Q. What caused them to burn? A. The two conductors lying against the steel pins caused a short resulting in an arc which burned the B phase down. . . . Q. Can you think of any other reason for the wires falling than the one you just gave? A. None whatever. Q. State whether that kind of accident causing those wires to fall and burn in the manner they did is an accident that usually occurs because the company is negligent? . . . A. No, sir. MR. MITCHELL. Just a moment. The witness answered before I could make the objection, and I object on the ground it is argumentative. THE COURT. Isn't that the very question the jury is going to pass on? MR. BRIARE. It is within the province of the expert, I believe. MR. MITCHELL. I move to strike that out on the ground it went in before I had a chance to make objection. THE COURT. Granted. In other words, an expert can't give an opinion on the very issue that the jury has to determine. MR. BRIARE. May we be heard on that subject, your Honor? THE COURT. All right. MR. BRIARE. We can take it up at the recess. I think there is an authority in this class of case where an expert might offer an opinion. THE COURT. I had this same question with the Lynn Bent case. MR. BRIARE. We will pass it for this time."

Following the striking of the answer upon plaintiffs' motion, which motion was made upon the ground that the answer went in before counsel had a chance to interpose an objec-

tion, there was some discussion regarding the admissibility of the evidence but the court signified its willingness to hear argument on the subject. Thereupon counsel for defendant suggested that argument be had during the recess and said "We will pass it for this time." This constituted a temporary withdrawal of the question and it does not appear that the question was again asked or that any further reference was made to the subject during the trial. It requires no citation of authority to sustain our conclusion that error may not be predicated upon the portion of the record to which reference has been made.

The judgment is affirmed.

Nourse, P. J., concurred.

A petition for a rehearing was denied March 4, 1943, and appellant's petition for a hearing by the Supreme Court was denied April 1, 1943.