KALE L. ASHER, APPELLEE, v. COCA COLA BOTTLING COMPANY OF SCOTTSBLUFF, A CORPORATION, APPELLANT.

112 N. W. 2d 252

Filed December 1, 1961. No. 35045.

*Wright & Simmons* and *James R. Hancock,* for appellant.

*Lyman & Winner,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is an action by plaintiff to recover damages sustained in drinking a bottle of Coca Cola in which a dead mouse was found. The jury returned a verdict for the plaintiff in the amount of $2,000. The defendant has appealed.

The evidence shows that plaintiff on June 10, 1959, entered the Eagle Cafe in Scottsbluff, Nebraska, and ordered a bottle of Coca Cola. The uncapped bottle of Coca Cola was served by a waitress with a straw inserted in the bottle. After drinking most of the contents through the straw he drank the balance from the bottle. He swallowed some foreign substance and upon examination discovered a dead mouse in the bottle. The plaintiff had suffered from an emotional gastritis for several years. There is evidence the plaintiff became ill upon discovery of the dead mouse. There is medical testimony that the incident aggravated plaintiff's condition for 30 days or more, causing abdominal pains during that period.

The petition is in the form of a suit on two causes of action, one on the res ipsa loquitur doctrine for negligence, the other on the theory of an implied warranty by the manufacturer on contract. The trial court submitted both theories to the jury with a direction that only one recovery could be had. It is the contention of

defendant that the trial court erred in submitting either theory to the jury under the evidence.

The evidence shows that the defendant was the manufacturer and bottler of Coca Cola. It delivered Coca Cola to the Eagle Cafe regularly twice a week in wholesale quantities. The cases of Coca Cola were stacked along the wall near a cooling machine. The bottles were transferred to the cooling machine as needed. When a bottle of Coca Cola was ordered it was taken from the machine, uncapped, and served by the waitress serving the customer. Other manufacturers of soft drinks made similar deliveries of their products which were stacked in the same area as the Coca Cola.

The evidence of the defendant shows the method of washing, rinsing, filling, capping, and inspecting the bottles, which inspection took place before and after filling. The capped bottles were then stored in defendant's warehouse facility until removed to fill orders. There is evidence that opportunity existed at the Eagle Cafe for others, including the deliverymen of competitors, to exchange bottles and to remove and replace the caps placed on the bottle by the manufacturer. The testimony is that the cap could be removed, a mouse inserted, and the bottle recapped by a prankster or competitor. An employee of the Eagle Cafe testified that no recapping appliance had ever been maintained in the cafe and that all bottles of Coca Cola were opened immediately before serving.

It is the contention of the defendant that the divided control of the Coca Cola bottle containing the mouse by the defendant and the Eagle Cafe precludes a recovery by plaintiff under the doctrine of res ipsa loquitur. The doctrine of res ipsa loquitur is that if a thing which causes injury is shown to be under the control and management of a defendant and the occurrence causing injury is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence in the ab-

sence of explanation by the defendant that such occurrence arose from want of proper care. Benedict v. Eppley Hotel Co., 159 Neb. 23, 65 N. W. 2d 224. There appears to be some divergence of views in the holdings of other states as to the meaning of "exclusive control" in applying the doctrine of res ipsa loquitur to a manufacturer of bottled goods sold to a retailer who in turn sold the deleterious product to the consumer. Since this is a case of first impression on that question, we necessarily look to the decisions of other states for the reasoning to be applied. The defendant contends for the rule announced in Coca-Cola Bottling Works v. Sullivan, 178 Tenn. 405, 158 S. W. 2d 721, 171 A. L. R. 1200, holding that in order for a plaintiff to recover in such a case "it must be made to appear, by a clear preponderance of the evidence, that there has been no such divided or intervening control of the bottle as to afford any reasonable opportunity for it or its contents to have been tampered with by another after it left the possession or control of the defendant or its agents." See, also, Jordan v. Coca Cola Bottling Co. of Utah, 117 Utah 578, 218 P. 2d 660, 52 A. L. R. 2d 108; Williams v. Paducah Coca Cola Bottling Co., 343 Ill. App. 1, 98 N. E. 2d 164; Coca-Cola Bottling Co. of Jonesboro v. Misenheimer, 222 Ark. 581, 261 S. W. 2d 775.

The plaintiff relies upon a line of cases holding that the doctrine of res ipsa loquitur is applicable and raises an inference or presumption of negligence on the part of the manufacturer or bottler of a beverage which, when sold in a bottle, can, or other sealed container, contains a foreign substance. Eisenbeiss v. Payne, 42 Ariz. 262, 25 P. 2d 162; Beaumont Coca Cola Bottling Co. v. Guillot (Tex. Civ. App.), 222 S. W. 2d 141; Crystal Coca-Cola Bottling Co. v. Cathey, 83 Ariz. 163, 317 P. 2d 1094. In the last case cited the court dealt with the question of the exclusive control of the deleterious product by the manufacturer as it relates to the rule of res ipsa loquitur as follows: "We hold that in this fourth class of

case (intervening vendor) in order to satisfy the exclusive control requisite of the res ipsa loquitur doctrine the plaintiff must either prove 'that there has been no reasonable opportunity for tampering' or that there was no tampering 'with the bottle, or its contents, in the interim between the physical control of the bottler or manufacturer, and that of the consumer.' This is a question of fact which the plaintiff may prove by circumstantial evidence for submission to the jury under proper instructions. In the instant case the court instructed the jury that in order for the res ipsa loquitur doctrine to apply, they must determine that the fly did not get into the bottle as a result of the intervening act of a third party and that the condition of the bottle was the same when it left the defendant bottling company's control as when it was received by the plaintiff."

The rule of res ipsa loquitur is a rule of evidence. It is not conclusive and the inference or presumption existing under the rule may be overcome by evidence. It is ordinarily for the jury to determine whether or not the act complained of was the result of the manufacturer's negligence. In this respect, the evidence shows the precautions taken by the defendant to avoid the contamination of its product. Inspection is an important phase of the precautions taken. Careless inspection of bottles before and after filling could well be the proximate cause of the wrong. The method of handling by the Eagle Cafe is fully explained, and the jury could find that the bottle containing the dead mouse was not tampered with while in the possession of the Eagle Cafe, or that a reasonable opportunity for tampering was not afforded. There is no evidence of tampering on the part of any one, the evidence being only that it was possible for tampering to have occurred. The condition of the dead mouse at the time of its discovery indicated that it had been in the bottle for some time. The jury in a consideration of all the evidence had a reasonable basis for its finding that the dead mouse was in the bottle at the

time of the delivery of the bottle to the Eagle Cafe. The trial court therefore did not err in submitting negligence on the theory of the res ipsa loquitur doctrine.

The defendant contends that it was error to submit the case on the theory of an implied warranty by the manufacturer. It contends that an implied warranty extends no further in time or effect than to the time of delivery to the Eagle Cafe. The basic contention is that plaintiff's case must fail because of the want of privity of contract between the manufacturer and consumer. The evidence is not disputed that defendant advertised its product as wholesome and fit for public consumption.

The early cases on the subject appear generally to have denied recovery on the basis of a lack of privity. But in the light of changed conditions relating to the manufacture, marketing, and distribution of goods, and the making of sales through intermediaries and advertising media, the requirement of privity has been generally abandoned. It is no longer an element to be established in an action upon an implied warranty that food products are wholesome and fit for public consumption where they are shown to be in the same condition as when they left the control of the manufacturer. The reason of the rule which we adopt is stated in the following cases: Manzoni v. Detroit Coca-Cola Bottling Co., 363 Mich. 235, 109 N. W. 2d 918; Freeman v. Navarre, 47 Wash. 2d 760, 289 P. 2d 1015; Jacob E. Decker & Sons, Inc. v. Capps, 139 Tex. 609, 164 S. W. 2d 828; Colvin v. John Powell & Co., 163 Neb. 112, 77 N. W. 2d 900. The evidence was sufficient to sustain a recovery on the implied warranty theory.

The defendant asserts that the trial court erred in not sustaining defendant's motion to require plaintiff to elect as between negligence on the theory of res ipsa loquitur and contract on the basis of implied warranty. We point out that the petition alleges but a single wrong and prays for a single recovery for such wrong. Plaintiff asserts two remedies, neither of which is incon-

sistent with the other. Both remedies were available to the plaintiff as long as he claimed a single and not a double recovery. In State v. Bank of Commerce, 61 Neb. 22, 84 N. W. 406, this court passed directly upon the question in the following language: "Before a case can arise for the application of the principle of election there must be (1) two co-existing remedies; and (2) those remedies must be so inconsistent that a party can not logically choose one without renouncing the other." See, also, Anderson v. Tyler, 223 Iowa 1033, 274 N. W. 48; City of Alliance v. Cover-Jones Motor Co., 154 Neb. 900, 50 N. W. 2d 349. The assignment is without merit.

Errors in certain of the instructions are assigned. An examination of the instructions objected to reveals that they, together with the other instructions given, fairly submit the issues to the jury. We find no prejudicial error in the instructions.

Complaint is made of the action of the district judge in endorsing the words "Given as Modified" on four of the instructions given to the jury. Section 25-1113, R. R. S. 1943, requires that the trial court "must write the words 'given,' or 'refused,' as the case may be, on the margin of each instruction." The action of the trial court is not in accord with the statutory direction, but we find no prejudice in the present case in using the term "Given as Modified."

Defendant assigns the excessiveness of the verdict as grounds for a new trial. The question is not discussed in defendant's brief and we consider the assignment abandoned under Rule 8a2 (4) of the rules of this court.

We find the record to be free from prejudicial error and the judgment is affirmed.

AFFIRMED.