BOBBIE J. HARVEY AND ROBERTA H. HARVEY, APPELLEES, V.
METROPOLITAN UTILITIES DISTRICT OF OMAHA, A MUNICIPAL
CORPORATION, APPELLANT.
523 N.W.2d 372

Filed November 4, 1994.   No. S-93-310.

Daniel G. Crouchley for appellant.

David L. Welch, of Gaines, Mullen, Pansing & Hogan, for appellees.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ., and BOSLAUGH, J., Retired.

WRIGHT, J.

This action was brought pursuant to the Political Subdivisions Tort Claims Act. Bobbie J. Harvey and Roberta H. Harvey asserted negligence on the part of Metropolitan Utilities District of Omaha (MUD), relying on the doctrine of res ipsa loquitur. The Douglas County District Court found that MUD's negligence was the proximate cause of explosions and a fire at the Harveys' residence and that MUD's negligence

caused the Harveys' loss of real and personal property. MUD appeals.

## SCOPE OF REVIEW

A district court's factual findings in a case brought under the Political Subdivisions Tort Claims Act will not be set aside unless such findings are clearly incorrect. *Mix v. City of Lincoln*, 244 Neb. 561, 508 N.W.2d 549 (1993). In a review of a bench trial under the Political Subdivisions Tort Claims Act, an appellate court must consider the evidence in the light most favorable to the successful party, resolving any conflicts in the evidence in favor of that party and giving to that party the benefit of all reasonable inferences that can be deduced from the evidence. *Stewart v. City of Omaha*, 242 Neb. 240, 494 N.W.2d 130 (1993).

## FACTS

On October 3, 1989, the Harveys owned a house which was provided natural gas service by MUD. Roberta Harvey called MUD and asked to have a gas meter in the northeast corner of the basement of the residence replaced. Within hours after the gas meter was installed, Bobbie Harvey noticed there was no hot water. He discovered that the security valve on the gas meter had closed and stopped the flow of gas from entering the residence, and he reset the security valve. On October 4, the security valve closed again, and Roberta Harvey notified MUD. On the same day, an MUD employee reset the security valve and relit the gas appliances. No evidence was provided to show that the gas meter was touched between that time and November 29, the date of the fire at the Harveys' residence.

On November 29, 1989, at approximately 7:30 p.m., Roberta Harvey opened her front door and felt or heard a rush of air that she described as a "whoosh." She made her way to the midpoint of the basement stairs to locate the cause of the turbulent air, and she observed a glow under the furnace room door which she determined to be a fire. As she retreated up the stairs, the wall abutting the furnace room blew across the stairway behind her. From the top of the stairs, she saw blue and red flames in the basement. After leaving her residence to go to a neighbor's, she heard a "boom" emanate from her residence.

The fire department responded quickly, but firefighters had difficulty extinguishing the fire, which was "gas fed." The utilities had to be turned off to gain control of the fire. The residence was burned beyond repair, and the contents were either damaged or destroyed.

On December 7, 1989, three tests were conducted which determined that there was no gas leak leading to the gas meter and no leak running from the meter downstream to the Harveys' appliances. The third test showed numerous leaks within the gas meter itself. The district court found that

> [t]he leakage could have been caused by destruction of the gaskets in the meter and security valve area of the assembly during the fire, or the gaskets could have been in disrepair or in one case not utilized prior to the fire which could have been the cause of the gas leak and eventual explosion. Further, the leakage could have initially been caused by cross-threading the meter to the piping, all of which was owned by MUD.

At trial, experts testified as to the cause of the fire. Kenneth Ward had participated in MUD's testing of the gas equipment in the house and had taken photographs at the house. Based on his investigation, experience, and training, Ward stated that the fire was caused by a gas leak in the area of the gas meter. James Belina had examined the gas pipes and other gas equipment and observed tests conducted on the equipment. He concluded that the fire was initiated by a gas leak in the area of the gas meter. Donald Blocker, an MUD claims representative and investigator, participated in the examinations completed by Ward and Belina, but Blocker was of the opinion that there was no gas leak in the Harveys' basement. LaVerne Rinehart, a retired deputy fire marshal, based his opinion primarily upon photographs taken at the scene and testified that the fire did not start in the corner of the basement in which the gas meter was located. John Freeman, Jr., an engineer who testified on MUD's behalf, opined that there was no gas leak in the Harveys' residence before the fire. Freeman had not examined the site of the fire, but had completed tests on a meter similar to the one in the Harveys' basement. No evidence of any specific acts of negligence was offered by either the Harveys or MUD.

The district court found that the origin of the explosions and fire was a natural gas leak emanating from some part of MUD's gas meter assembly and that the gas meter assembly was under the exclusive control and management of MUD. The court held that MUD's exclusive control was not defeated by the fact that the gas meter assembly was on the Harveys' premises and found that although the Harveys reset the security valve, it was clear that an MUD employee reset the security valve and relit and cycled the Harveys' appliances the following day. In finding that the resetting of the security valve by the Harveys did not defeat their reliance upon the doctrine of res ipsa loquitur, the court relied upon *Asher v. Coca Cola Bottling Co.*, 172 Neb. 855, 112 N.W.2d 252 (1961), for the proposition that some control exercised by a party other than the defendant can be exerted over an instrumentality and the doctrine of res ipsa loquitur is not thereby defeated. The court concluded that MUD's negligence was the proximate cause of the explosions and fire and the Harveys' loss of real and personal property.

## ASSIGNMENTS OF ERROR

MUD claims that the district court erred (1) in relying upon an inference based upon an inference as the basis for circumstantial proof of the cause of the explosions and fire, (2) in relying upon inferences for proof of the cause of the explosions and fire and pyramiding the added inference supplied by the application of the doctrine of res ipsa loquitur, and (3) in misapplying the doctrine of res ipsa loquitur by finding that the gas meter assembly in the Harveys' basement was wholly and exclusively under the possession and control or management of MUD and in misapplying the rule of circumstantial evidence as the basis of proof of the cause of the explosions and fire.

## ANALYSIS

The doctrine of res ipsa loquitur is not a matter of substantive law, but, as a form of circumstantial evidence, is a procedural matter. *Anderson v. Service Merchandise Co.*, 240 Neb. 873, 485 N.W.2d 170 (1992). When res ipsa loquitur is applied, an inference of a defendant's negligence exists for submission to the fact finder, which may accept or reject the

inference in the factual determination of whether the defendant is negligent. *Brown v. Scrivner, Inc.*, 241 Neb. 286, 488 N.W.2d 17 (1992).

MUD argues that the district court erred in relying upon an inference based upon an inference as the basis for circumstantial proof of the cause of the explosions and fire, thus pyramiding the added inference supplied by the application of the doctrine of res ipsa loquitur. MUD's challenges are in essence an attack on the court's resolution of the credibility issues. The district court had before it the testimony of Roberta Harvey as to the events of November 29, 1989. The court reviewed the evidence of the tests done on the gas meter after the fire and received testimony that the fire was "gas fed" at the time the firefighters arrived. The court also considered the testimony of five experts regarding the cause of the fire.

The district court found that the evidence adduced by the Harveys as to the proximate cause and origin of the fire was more credible than that adduced by MUD. The court found that MUD's experts had differing opinions regarding the cause of the explosions and that one defense witness could not relate with certainty what he had relied on to form his opinion. The court concluded that the credible evidence showed that the origin of the explosions and fire was a gas leak emanating from some part of MUD's gas meter assembly. There was sufficient evidence for the court to determine that MUD's negligence was the proximate cause of the explosions and fire and directly caused the Harveys' loss of real and personal property.

We find that the district court had sufficient evidence to determine that the fire was started by gas explosions caused by a leak within the gas meter. In a review of a bench trial under the Political Subdivisions Tort Claims Act, an appellate court must consider the evidence in the light most favorable to the successful party, resolving any conflicts in the evidence in favor of that party and giving to that party the benefit of all reasonable inferences that can be deduced from the evidence. *Stewart v. City of Omaha*, 242 Neb. 240, 494 N.W.2d 130 (1993). Giving the Harveys the benefit of all reasonable inferences, we find no error in this determination made by the

district court.

MUD also argues that the district court erred in applying the doctrine of res ipsa loquitur in this case. In order that res ipsa loquitur may be invoked, it must be shown that the occurrence is one which would not, in the ordinary course of things, happen in the absence of negligence; that the instrumentality which produces the occurrence is under the exclusive control and management of the alleged wrongdoer; and that there is an absence of explanation by the alleged wrongdoer. See *Anderson, supra.* Absent some reasonable explanation for the gas leak, which the district court found emanated from MUD's gas meter assembly, the court was not clearly wrong in applying the doctrine of res ipsa loquitur to this case and in finding that the occurrence was one which does not ordinarily occur in the absence of negligence. Thus, we determine that the first requirement of res ipsa loquitur has been satisfied.

The second requirement is that the instrumentality which produces the occurrence is under the exclusive control and management of the alleged wrongdoer. MUD challenges the district court's finding that the gas meter was under MUD's exclusive control at the time of the fire. In certain settings, strict exclusive control is not required and res ipsa loquitur will be applied to the party who had the last opportunity to affect an instrumentality which then passed out of its control but was not changed before the accident. In *Asher v. Coca Cola Bottling Co.*, 172 Neb. 855, 112 N.W.2d 252 (1961), the plaintiff was injured when he discovered a dead mouse in the bottle of cola he was drinking. The defendant had bottled the cola, but it had been in the possession and control of a cafe for some time before the incident. The court did not require exclusive control for res ipsa loquitur to apply, but, instead, required that the plaintiff prove either that there was no reasonable opportunity for tampering or that no actual tampering with the instrumentality occurred from the time the defendant controlled it until the time of the injury. In the present case, the district court relied upon *Asher* to support its holding that MUD had exclusive control of the gas meter.

It is undisputed that MUD owned the gas meter and assumed the duty to keep the gas meter assembly in good repair. MUD

reserved exclusively to itself the right to set the meters, and the evidence showed that an MUD employee was the last person to have touched the gas meter. A natural gas company has a heightened legal duty based on the dangerous nature of its product. The gas in the pipe belonged to MUD, and as long as it remained MUD's property, MUD was under the duty to use proper care to protect the Harveys from injury caused by the dangerous propensities of the gas. See *Daugherty v. Nebraska Nat. Gas Co.*, 173 Neb. 30, 112 N.W.2d 790 (1961). In *Daugherty*, we refused to allow the gas company to escape liability for a gas explosion in spite of the fact that the line that exploded was owned by the homeowner. We based this holding in part on the fact that the defendant had carried out repairs on the line that eventually exploded. We held that the gas company had a continuing duty to exercise proper care to prevent injury from escaping gas.

In the present case, MUD had the primary responsibility for maintaining the gas meter. MUD was the last entity to have worked with the gas meter. The evidence established that MUD owned and had responsibility for the gas meter assembly and that no one had touched the meter after the MUD employee's visit on October 4, 1989. The district court was not clearly wrong in finding that MUD had exclusive control of the gas meter at the time of the fire. Thus, the second requirement has been satisfied.

The third requirement is an absence of explanation by the alleged wrongdoer. MUD only offered evidence intended to establish a cause for the fire other than a natural gas leak. The trier of fact did not accept MUD's alternate explanation of causation. A district court's factual findings in a case brought under the Political Subdivisions Tort Claims Act will not be set aside unless such findings are clearly incorrect. *Mix v. City of Lincoln*, 244 Neb. 561, 508 N.W.2d 549 (1993). Accepting that the fire was caused by a gas leak, we find that MUD offered no evidence which would explain the occurrence. There is an absence of explanation by the alleged wrongdoer, and the third requirement has been satisfied.

The district court's factual findings are not clearly incorrect. The court was justified in applying the doctrine of res ipsa

loquitur and finding negligence on the part of MUD. The judgment of the district court is affirmed.

AFFIRMED.